No. 11,032.

NEW ORLEANS, CITY & LAKE RAILROAD COMPANY VS. THE CITY OF NEW ORLEANS.

1.   The power of regulating the streets, delegated to the city of New Orleans by the Legislature of the State, embraces authority to establish street railways on its streets, but it does not include authority to grant to any person or corporation an exclusive privilege to operate a railway on any street.

2. The power to regulate the use of streets for railway purposes is a persisting power inhering continuously in the city government, and one council can not, by one exercise of the power, deprive succeeding councils of the power to exercise it again when found necessary for the public interest.

3. Whether or not the Legislature itself possessed, under prior constitutions, the power to grant such exclusive privileges, we hold that under the general and cautious terms of the legislative charter of the city no such power was delegated to the latter.

4. In this case the exclusive privilege embodied in the contract between the city and plaintiff was *ultra vires*, and not binding on subsequent city councils, and whatever relief plaintiff may claim for violation of this stipulation of its contract, it clearly can not enjoin the city from doing that which it has a lawful right to do.

5. Whilst valid contract rights must be respected, or only interfered with in the constitutional exercise of the power of eminent domain, claims to exclusive privileges, under grants which are *ultra vires*, can not be permitted to thwart or obstruct the municipal discretion in the exercise of the power to regulate the streets confided to the city to be used for the benefit of the people.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Buck, Dinkelspiel & Hart* for Plaintiffs and Appellants.

1. Franchises to construct and maintain street railways, when acquired for value, constitute property in the highest sense of the term, and can not be impaired or taken away except under the exercise of the power of eminent domain. 32 An., p. 915; People vs. O'Brien, 111 N. Y., p. 1; Pierce on Railroads; Elliott on Streets and Roads; Dillon on Municipal Corporations; 73 Iowa 502; 33 Northwest. Reporter, 610. References and authorities cited in the brief.

2. A stipulation in a contract of sale of right of way, based upon ordinances passed by the municipal corporation, to the effect that "The City of New Orleans binds herself not to grant during the period for which said franchises are sold a right of way to any other railroad company upon the streets upon which said right of way is hereby sold, unless by mutual agreement between the city and the purchaser or purchasers of this franchise," is not a grant of an exclusive privilege or monopoly, in the sense in which these terms are usually understood in the laws and constitutions of this State; but even if so, in the absence of a constitutional provision prohibiting the granting of monopolies or exclusive privileges, the Legislature of the State could validly make such a grant.

Where such a grant is made by the city of New Orleans, exercising the power vested in her by the State, the only question that can arise is a question of delegation of the necessary power.

3. When the contract in question, dated October 2, 1879, was entered into, there was no prohibition in the laws or in the Constitution of the State against such a grant; the Legislature could, therefore, have legally made it, or delegated the power to do so to the municipal corporation.

4. Under the Charter of 1870, Act 7, extra session of that year, and in other legislative acts, the State had delegated " full power," meaning all her power in the premises, to the city of New Orleans. (References in brief.)

5.  The subsequent legislation of the State confirms the interpretation placed by this court and the city authorities in the premises on the power exercised by the city, and authorizes expressly the sale of street railway franchises for price and on " terms and specifications " prescribed by the city and published to the world. Acts cited in brief.

*W. B. Sommerville*, Assistant City Attorney, for Defendant and Appellee:

The charter of the city of New Orleans, Act No. 7 of 1870, does not confer power upon the corporation to grant the exclusive privilege of the use of a street. The power conferred was restricted to the regulation and management of the streets. New Orleans, City and Lake R. R. Co. vs. City of New Orleans, 43 An.—(decided April 18, 1892); Canal & Claiborne St. R. R. Co. vs. Crescent City R. R. Co., 43 An.—(decided April 4, 1892); Canal & Claiborne St. R. R. Co. vs. Orleans R. R. Co., 43 An.—; Canal & Claiborne St. R. R. Co vs. Crescent City R. R. Co., 41 An. 561; New Orleans City R. R. Co. vs. Crescent City R. R. Co., 12 Fed. R. 308; Brown vs. Duplessis, 14 An. 854; Elliott on Roads and Streets, pp. 566, 567, 568 and 573; Minturn vs. Larue, 23 How. 435.

The opinion of the court was delivered by

FENNER, J.   This is a suit by injunction to prevent the city from selling a right of way for a sreet railroad over a certain portion of Magazine street, the plaintiff claiming that the proposed sale violates the following stipulation in the subsisting contract between it and the city:

" The City of New Orleans binds herself not to grant during the period for which said franchises are sold a right of way to any other railroad company upon the streets through which said right of way is hereby sold, unless by mutual agreement between the city and the purchaser or purchasers of these franchises."

It can not be denied that the action sought to be restrained is in violation of the terms of this quoted clause of the contract. Whether the plaintiff is entitled to any, and if so, to what relief on account of such violation, are questions which we shall not discuss in the present opinion. It is sufficient to say that plaintiff is clearly not entitled to the particular relief invoked in this case.

We have repeatedly held that the City Council of New Orleans has no power to grant an exclusive right to use a street for the purposes of a street railway; and that any such exclusive grant can not operate to deprive succeeding councils of the right and power to regulate the streets by granting new franchises when deemed necessary for the public convenience, and when not inconsistent with, or destructive of, the exercise of franchises formerly granted.

The proposed sale does not interfere with the exercise of the franchise granted to plaintiff save in the single feature of its exclusiveness. If the City Council, with which plaintiff contracted, had no power to grant an exclusive right or to deprive succeeding councils of the right to grant new franchises in the public interest, obviously plaintiff's claim to an injunction restraining the granting of such new franchises can not be sustained, even if it were conceded that plaintiff was entitled to some kind of relief for the consequent breach of its contract.

We do not understand that the learned counsel of plaintiff contests the logic of this conclusion; but with great earnestness and zeal he assails the correctness of the judicial conclusion which we have repeatedly announced, that the City Council of New Orleans has no power to grant or sell, *in perpetuo*, or for a term of years, the exclusive right to use its streets for the purposes of a street railway. New Orleans City & Lake Railroad Company vs. City of New Orleans, 44 An. — (decided, April 18, 1892); Canal and Claiborne Street Railroad Company vs. Crescent City Railroad Company, 44 An. — (decided, April 4, 1892); Canal & Claiborne Street Railroad Company vs. Orleans Railroad Company, 44 An. —; Canal & Claiborne Street Railroad Company vs. Crescent City Railroad Company, 41 An. 561; New Orleans City Railroad Company vs. Crescent City Railroad Company, 12 Fed. R. 308.

He claims that this is the first case which has been presented in which the grant of the exclusive right has been expressly made as a stipulation and condition of a contract, and that it is thus differenced from prior cases.

In the case first above cited (which, however, is not yet final) we had under consideration the very contract now presented, and we then held, in the language of the syllabus:

"The charter of the city of New Orleans, Act No. 7 of 1870, did not confer power upon the corporation to grant the exclusive privilege of the use of a street. The power conferred was restricted to the regulation and management of the streets."

We have, however, carefully considered the plaintiff's argument, which reduced to the form of a syllogism is as follows:

1. In absence of constitutional inhibition, which did not exist at date of this contract, the Legislature of the State had the power to grant exclusive rights to the use of a street for a street railway.

2 The Legislature of Louisiana has delegated to the city of New Orleans its whole power over this subject; *ergo* the city has power to grant such exclusive rights.

In support of the *major* premise counsel cites a formidable array of authorities. We have no occasion to consider these or to enter into the nice distinctions in the definition and limitation of the legislative power on this subject which appear in the decisions and text b·oks, because the doctrine heretofore announced by us rests entirely on our negation of the *minor* premise.

The grant of power to the City Council in this matter, under the Charter of 1870, in force at the date of this contract, is found in Sec. 12, as follows:

" To regulate and make improvements in the streets. * * * To regulate the proper government of carts, drays, carriages, omnibuses, and other vehicles of every description; freight, locomotive, passenger and street cars, which run in the streets and within the limits of the city." * * *

We have been referred to, and have ourselves been able to find, no authority holding that such a grant included a delegation of power to grant an exclusive right of way over streets to a railway company.

The power to " regulate the streets " is a persisting power, not exhausted by a single exercise thereof.

The case of Brown vs. Duplessis, 14 An. 854, held that it was a proper exercise of this power of regulation for the city to authorize street railways to be established on the streets. If one council, under this power to regulate, had the right to establish such a railway, it is difficult to understand why a succeeding council, having precisely the same power, should not have the right to establish a similar railroad, when found necessary in the public interest, and provided always it did not destroy or impair substance of the former grant.

The legislative grant to the city of New Orleans of the power to establish street railways is subject to the same construction which would be applied to a direct legislative grant to a private corporation for the same purpose; and as to the latter, Judge Dillon says:

" A legislative grant of authority to construct a street railway is not exclusive unless so declared in terms, and, therefore, the Legislature may, at will and without compensation to the first company,

Railroad Co. vs. City.

authorize a second railway on the same streets or line, unless it has disabled itself by making the first grant irrepealable and exclusive."
2 Dillon Mun. Corp., 3d Ed., Sec. 727.

The same principle must be applied in the construction of legislative delegations of authority to municipal corporations. Unless the terms of the delegation embrace expressly the power to grant exclusive rights, or are so sweeping as to operate a complete abdication of the whole legislative power in favor of the corporation, it can not be held to include such extraordinary power, the possession of which even by the Legislature is not free from dispute. See Elliott on Roads and Streets, p. 569.

The extremely general, guarded and cautious terms of the dele- gation in the instant case preclude any such construction and pro- duce a strong conviction that no such purpose was contemplated by the legislative mind.

The most apposite case we have found is that of Davis vs. Mayor, 14 N. Y. 536, of which we give Judge Dillon's summary as follows:

"In a leading case, Davis vs. Mayor, it appeared that the city corporation, by its charter, possessed general power to open, alter, repair and *regulate* the streets. By virtue of this power, and with- out any express authority from the *Legislature*, the corporation of the city undertook, by resolution, to confer upon an association of persons the *exclusive* right to construct and maintain *for a term of years* a railway in Broadway for the transportation of passengers for profit. It was the opinion of five of the seven judges of the Court of Appeals that the resolution was void. * * The judgment of the court in the case mentioned rests upon the sound principle that the powers of the corporation, in respect to the control of its streets, are held in trust for the public benefit, and can not be surrendered or delegated by contract to private parties." 2 Dillon Mun. Corp. Secs. 715, 716.

The later case of People vs. O'Brien, 111 N. Y. 1, does not over- rule or conflict with Davis vs. Mayor, but is clearly distinguish- able from it in the essential feature that an *exclusive* grant was not involved.

A different conclusion from that which we have reached would be nothing less than a public calamity.

Under the conditions of life in great cities, experience demon- strates that the power of regulating the use of streets in the estab-

---

State vs. Sheriff et al.

---

lishment of railways thereon is one of the most important and essential of all municipal powers to the comfort, convenience and health of the inhabitants.   Such railways relieve the unwholesome crowding of population in central localities, abolish the nuisance of over-populated tenement houses, enable the industrial classes to find homes where land is cheap, space is ample and air is pure, from which these carriers supply swift and frequent transportation to and from their working places, and contribute, in so many ways, to the comfort and convenience of the whole people that one wonders how such communities ever lived without them.

Whilst valid contract rights must be respected and only interfered with in the constitutional exercise of the power of eminent domain, claims to exclusive privileges, under grants which are *ultra vires*, can not be permitted to thwart or obstruct the municipal discretion in the administration of this important public trust confided to them to be exercised for the benefit of the people.

Judgment affirmed.