## TINSLEY ET AL. *v.* FRUITS.

[No. 2,512.     Filed June 30, 1898.]

PLEADING.—*Counterclaim.*—A counterclaim filed by defendant in an action on a promissory note given for the purchase-money of machinery bought of plaintiff which alleges that the machinery did not do the work which it was warranted to do, and that defendant expended large sums of money in repairing same, is not bad for failing to aver that the machinery was worthless.  *pp. 535, 536.*

INSTRUCTIONS.—*Sales.—Principal and Agent.*—The court erred in instructing the jury in an action on a promissory note given for the purchase-price of certain machinery, that if the jury found that plaintiffs sold defendant the machinery in question that plaintiffs were estopped from denying that they were the owners of the machinery at the time of the sale, and that the jury should disregard any evidence tending to show that plaintiffs were not the owners thereof, where the theory of plaintiffs was that the machinery was the property of their principal, and that they sold same as agents of their principal. *pp. 537-540.*

ACTION.—*Theory.*—Parties are bound by the theory upon which they try their case, and must recover upon that theory or not at all. *p. 539.*

CONTRACTS.—*Written Contract.—Oral Negotiations.*—Where a written contract is made covering the subject-matter involved, all oral negotiations leading up to it are merged in the written contract. *p. 541.*

BILLS AND NOTES.—*Estoppel.*—A provision in a promissory note given in payment of machinery purchased, that the title to the property shall remain in the payees until the note is paid, will not preclude payees from showing, in an action on the note, that they were not the owners of the property.  *p. 542.*

From the Montgomery Circuit Court.     *Reversed.*

Tinsley *et al. v.* Fruits.

*M. W. Bruner*, for appellants.

*Paul & Van Cleave, Wright & Seller* and *W. P. Britton*, for appellee.

Wiley, J.—Appellants were plaintiffs below, and sued appellee upon two promissory notes and a balance alleged to be due upon an account. The complaint was in three paragraphs; the first and second based upon the notes and the third upon the account. The two notes sued on were given as part payment of a Keystone corn husker and fodder shredder, and each contained the following provision: "I further agree that the title to the No. 826 Corn Husker and Shredder, for which this note is given, shall remain in said Tinsley & Martin's hands until this note is fully paid, unless the payees elect to make this note absolute."

Appellee answered in two paragraphs and filed a counterclaim in two paragraphs. The first paragraph of answer was a plea of payment. The second paragraph went to the first and second paragraphs of complaint. This paragraph admits the execution of the notes, and avers that before suit was brought, and without having been notified that appellants had elected to make said notes absolute, appellee tendered back to appellants said machine and demanded the surrender of the notes sued on; that they declined to accept the same and surrender the notes; that appellee cannot bring said machine into court on account of its great size and weight, and concludes with an offer to deliver it to appellants.

The first paragraph of the counterclaim averred the purchase of the machine by the appellee from appellants; that appellants warranted the machine to do the work for which it was intended, and that it so failed to do the work. This paragraph of counterclaim then avers certain facts in regard to what appellee did to make the machine work; that he ex-

pended large sums of money in repairs, labor, etc., and asks for judgment on account thereof. The theory of this paragraph is that appellants gave an express parol warranty of the machine and that said warranty failed. The second paragraph of counterclaim is like the first, except it counts upon an implied warranty.

Appellants addressed a demurrer to the second paragraph of answer and the two paragraphs of counterclaim, which demurrers were overruled. Appellants replied to the second paragraph of answer and answered the first and second paragraphs of counterclaim by general denial. Trial by jury, a general verdict for appellants on the account, and for appellee on the notes. Over appellants' motion for a new trial judgment was rendered on the verdict. Overruling the motion for a new trial, and the demurrers to the first and second paragraphs of counterclaim are the only errors assigned which counsel for appellants have discussed.

It is urged that neither paragraph of the counterclaim is good, because it is not averred that the machine purchased was worthless. If the same facts as stated in the counterclaim had been pleaded in an answer, appellants' objections would have been well taken, but a counterclaim does not fulfil the office of an answer. While any matter pleaded as a counterclaim must arise out of or be connected with the transaction set forth as a cause of action in the complaint, yet such facts must be sufficient to constitute an original cause of action against the plaintiff, or the pleading will be bad on demurrer, although the facts set forth might have been a good defense if pleaded by by way of answer. *Brower* v. *Nellis*, 6 Ind. App. 323; *Miller* v. *Roberts*, 106 Ind. 63; *Mills* v. *Rosenbaum*, 103 Ind. 152; *Standley* v. *Northwestern, etc., Ins. Co.*, 95 Ind. 254; *Jones* v. *Hathaway*, 77 Ind. 14.

A counterclaim to be sufficient, must contain all the essential averments of a complaint, and must state a cause of action in favor of the defendant and against the plaintiff, growing out of the subject-matter alleged in the complaint. *Wabash Valley Protective Union* v. *James*, 8 Ind. App. 449. We think the pleading we are now considering, is sufficient, under the authorities cited.

The only remaining error assigned, which appellants have discussed, is the overruling of their motion for a new trial. There were eight reasons assigned for a new trial. The fifth cause was the giving of certain instructions tendered by the appellee. The first instruction, which appellants most earnestly contend was erroneous, is as follows: "Gentlemen of the jury, I instruct you that if you find from the evidence in this case that on or about the 15th day of November, 1893, the plaintiffs * * * were a firm doing business under the firm name of Tinsley & Martin, and if you find that said firm * * * sold and delivered to the defendant * * * the corn husker and shredder in controversy, * * * and that Michael Fruits executed two other notes of $100.00 each, at the same time, and like the notes set forth in plaintiffs' complaint, and that the plaintiffs have received payment from Michael Fruits for two of said notes and $25.00 on one of the others, then I instruct you that the plaintiffs are estopped from denying that they sold said corn husker and shredder to Michael Fruits, and they are also estopped from saying that they were not the owners of said corn husker and shredder at the time of such sale, and if you find such facts to be true then I instruct you that you should disregard any evidence that has been introduced before you, tending to prove that said Tinsley & Martin were not the owners of said corn husker and shredder at the time of such

sale, or tending to prove that said Tinsley & Martin did not make said sale." To apply this instruction to the facts to which it is addressed, and to understand correctly its full force and effect, it is necessary to state in brief what the record shows.

It is the theory of appellants, that the machine mentioned in the pleadings was sold by them to appellee, as agents of the Keystone Manufacturing Company, and that the contract of sale was in writing, and that such contract was the sole and only contract made.

It is the theory of appellee, as disclosed by his counterclaim, that he purchased the machine direct from appellants upon their warrranty, and that said warranty was in parol, and there had been a breach, etc. The only evidence on the question of sale and purchase, as disclosed by the record, was the testimony of the appellants and the appellee, and a written order signed by appellee, which appellants introduced in evidence.

The controlling issue in the case was, who made the sale of the machine to appellee? The contention of appellants is that the sale was made by the Keystone Manufacturing Company on a written order from appellee, which was negotiated and procured by and through appellants as agents. If this was true, then appellee could not recover on his counterclaim against appellants. If we concede that the sale was made to appellee as just indicated, then, under the facts stated in the counterclaim, appellee could not recover, for the counterclaim proceeds upon the theory of the contract of purchase and sale having been made between appellants and appellee, and the express and implied warranty relied upon, is based upon such sale.

We fully recognize the rule that where an agent acts for his principal and negotiates a sale under a

written or verbal contract containing a warranty, the agent may also be bound by an independent contract of warranty, but that is not this case. Parties are bound by the theory upon which they try their case, and must recover upon that theory or not at all. Appellee does not claim that he purchased the machine of the Keystone Manufacturing Company through appellants as agents, and that in addition to the warranty expressed in the contract, appellants made with him an independent express warranty, upon which they would be liable; but he rests his right of recovery upon a sale made directly to him by appellants, and their accompanying parol implied an express warranty.

While the instruction is ingeniously drawn, it is not a correct exposition of the law applicable to the facts. A proper interpretation of it is a direction to the jury to disregard any evidence tending to prove that appellants were not the owners of the machine sold. The only way possible for the jury to determine that appellants sold the machine, and were the owners of it at the time, was to disregard all the evidence tending to prove that they were not the owners. What was the evidence? Appellants both testified that they were the agents of the Keystone Manufacturing Company; that as such they negotiated the sale to appellee; that the contract or order of sale was in writing, and that they did not own the machine when sold. Appellee admitted that he executed a written order for the machine and that order was introduced and read in evidence. The order begins as follows: "Order for Keystone Combined Corn Husker and Fodder Cutter." This order is dated at Crawfordsville, November 5, 1893, and is addressed to "Keystone Mfg. Co., Sterling, Ill." The formal order is as follows: "Gentlemen: Please deliver on cars at Sterling, to

be shipped to me at Crawfordsville, in care of Tinsley & Martin, one No. 1 Keystone Corn Husker and Fodder Shredder, etc." The order contains an express warranty, and provides that the purchaser shall give notice in two days, if warranty fails. The order contains the following clause: "In consideration whereof the undersigned agrees to receive same on arrival, to pay freight and charges, and on delivery at depot, to pay to your agents Tinsley & Martin, etc." This order is signed by appellee, and on the back of it is a property statement signed by him.

The evidence shows that the machine was shipped direct from the factory to appellee in care of appellants. He was notified of its arrival, and he went to Crawfordsville and got it. In his examination appellee admits that he did not make a contract for the machine when appellant Martin first talked about it, and fails to say that he ever made such a contract with appellants.

On cross-examination appellee testified that Martin told him he was selling the machine for the Keystone Manufacturing Company. He then said: "I bought it of Mr. Martin. I done what talking about buying to Mr. Martin." When shown the written order, he acknowledged that he gave the order, and that it was his signature. The only evidence in the entire record, upon which it was possible for the jury to determine as a fact, that the machine was the property of Tinsley & Martin was the statement of appellee: "I bought it of Mr. Martin. I done what talking about buying to Mr. Martin." In view of all the facts in regard to the purchase and the sale, this language could have but one meaning, and that was that the negotiations between appellants and appellee, leading to the purchase of the machine by the latter, were had between Martin and appellee, and that the meaning

of the expression, "I bought it of Mr. Martin. I done what talking about buying to Mr. Martin," was that all oral negotiations leading up to the contract, were between them. We can readily see how a jury might be misled by the expression used by appellee, and especially is this true in view of the language used in the instruction. Where a written contract is made covering the subject-matter involved, it is the rule everywhere, that all oral negotiations leading up to it are merged therein, and this question is not covered by any of the instructions. The instruction under consideration tells the jury that if they find that appellants sold and delivered to appellee the machine described, they are estopped from saying that they did not sell it, or that they were not the owners of it; and if they did so find, they should disregard any evidence tending to prove that they were not the owners, etc.

In this instruction the court omitted to state an essential element, and that was to explain to the jury that if they found that appellants made the sale as agents for the Keystone Manufacturing Company, they could not regard that as a sale made by them as of their own property. The court failed to explain to the jury in any of the instructions, the distinction between appellants' selling the machine as agents of the Keystone Manufacturing Company and selling it as and for themselves. The appellee having testified that he bought the machine of appellants, under this instruction, the jury were evidently misled, that whether they made it agents or principals, it would make no difference. The mere fact of the sale having been made by them, whether as agents or principals, under the instruction, excluded from the consideration of the jury all the evidence on behalf of appellants as to the facts under which they sold the machine. Another objection to the instruction is that

it seeks to invoke the principle of estoppel as against the appellants.    The theory of the instruction is that, because there is a provision in the notes that the title to the property shall remain in the payees, etc., they are estopped to deny that they were not the owners when it was sold.

We cannot think that such a clause in the notes precludes appellants from showing they were not the owners of the property.    It is a mere inference, and there can be no estoppel by inference.    *Lash* v. *Rendell,* 72 Ind. 475; *Robbins* v. *Magee,* 76 Ind. 381.    It is subject to the further objection that it applies the principle of estoppel where there is no fraud charged, where no one has been deceived or misled to his injury.    It has been repeatedly held that there can be no estoppel without fraud.    *Anderson* v. *Hubble,* 93 Ind. 570, 47 Am. Rep. 394; *Pitcher* v. *Dove,* 99 Ind 175; *Ward* v. *Berkshire, etc., Ins. Co.,* 108 Ind. 301; *Kelley* v. *Fisk,* 110 Ind. 552; *Wisehart* v. *Hedrick,* 118 Ind. 341; *Maxon* v. *Lane,* 124 Ind. 592; *Albrecht* v. *Foster, etc., Co.,* 126 Ind. 318.

It is also a settled principle that the doctrine of estoppel can have no application where everything in relation to the transaction is equally well known to both parties. *Lash* v. *Rendell, supra; Fletcher* v. *Holmes,* 25 Ind. 458.    Here there is no pretense that appellants concealed or attempted to conceal any facts from appellee in regard to the sale.    Appellee gave a written order for the machine direct to the manufacturer.    He was notified, and so admitted, that Martin told him they were selling it as the agents of the manufacturer.    Hence the rule just announced applies and there could be no estoppel.

As the judgment must be reversed for the error in giving this instruction, the other questions presented by the motion for a new trial need not be decided, as

they are not likely to arise in a subsequent trial. Judgment reversed, with instructions to the court below to sustain appellants' motion for a new trial.