## STONE ROAD DAIRY CO. *v.* HUMES.

1. ESTOPPEL—ACQUIESCENCE IN INTERMINGLING OF BOTTLES.
   Where milk companies were in the habit of indiscriminately exchanging with milk distributers filled bottles for empty ones, regardless of the brand they bore, they are barred by estoppel *in pais* from asserting ownership of bottles bearing their brand coming into the possession of another dealer.

2. SAME.
   Estoppel *in pais* is equally available in courts of law as in equity.

Error to Tuscola; Beach (Watson), J. Submitted April 4, 1922. (Docket No. 19.) Decided October 2, 1922.

Replevin by the Stone Road Dairy Company against Edward Humes, deputy sheriff of Tuscola county, for the possession of certain milk bottles. Judgment for plaintiff. Defendant brings error. Affirmed.

*W. J. Spears,* for appellant.

*H. H. Smith,* for appellee.

STEERE, J. Defendant is a deputy sheriff of Tuscola county from whom plaintiff, a corporation, replevied several thousand milk bottles which he had seized in serving a search warrant issued by a justice of that county under the provisions of Act No. 164, Pub. Acts 1905 (2 Comp. Laws 1915, § 7404 *et seq.*), on complaint of W. L. Watson, acting as agent for certain Wayne county creamery companies which were distributers of milk in Detroit and claimed to own the bottles. The case was tried in the circuit court of Tuscola county without a jury, resulting in a judgment for plaintiff of $654.90, being the value of the bottles in question, as the court determined on waiver of return by plaintiff. The controlling facts are practically undisputed. From the findings of the court, requests of defendant and undisputed testimony they appear in substance as follows: Plaintiff was in the milk business with its principal place of business and plant for assembling and preparing its products located in Arbela township, Tuscola county, from where it distributed milk in the city of Flint and elsewhere. Its asserted title to these bottles was derived from, the Dairy Products Company which was a distributer of milk in the city of Detroit. It had given a chattel mortgage on its equipment, including these bottles,

which was foreclosed and plaintiff bought the property at the foreclosure sale under said mortgage, on July 2, 1920, for $8,210.56, being the highest bidder, and had the property at its place of business in Tuscola county when defendant seized the bottles under his warrant. The Dairy Products Company had obtained a portion of its bottles, both used and new some 3½ years before at a referee sale in bankruptcy of the assets of a bankrupt corporation called the Zimmer Dairy Company which has also been a distributer of milk in Detroit for some time before it failed, and during its business career had bought out a concern engaged in the same business in Detroit, receiving as a part of the equipment purchased a supply of milk bottles.

It was clearly shown and practically admitted that the milk bottles of the companies interested in this litigation, and all others engaged in distributing milk in Detroit, became intermingled in the regular course of distribution through the practice of deliverymen, grocers and purchasers of milk indiscriminately exchanging filled for empty milk bottles regardless of the brands which were in turn accepted by each distributer as they came in, refilled and put in circulation again as occasion arose, without any system of clearing, return or reclamation amongst themselves, resulting in each having amongst its stock of used bottles others than those it originally owned. The quantity so received in the customary course of indiscriminate exchange with customers being proportionate to the amount of business each did. There is no proof or claim that the Dairy Products Company or Zimmer Dairy Company otherwise came into possession of any of the bottles in question here, or that they had absorbed more bottles under this custom of indiscriminate use than they put in circulation from their original stock. So finding, the trial court held

that the statutory presumption of unlawful holding was overcome by the undisputed custom of indiscriminate intermingling and use, known, acquiesced and participated in by the complaining companies, and at this late date they were estopped from asserting ownership.

Defendant's assignments of error are directed to the proposition that proof of having complied with the provisions of said Act No. 164 and found bottles stamped with the registered marks in plaintiff's possession without the owners' written consent, is a complete defense in this action of replevin against their seizure for the original owners whose marks they bore, entitling them to proceed under said act to a final adjudication of the matter by the magistrate who issued the search warrant.

Against this plaintiff contends that the act is unconstitutional in stated particulars; that the process under which the officer made the seizure was based upon an invalid complaint combining eight distinct interests of eight individual claimants of separate ownerships; and the several creamery companies so claiming are estopped by knowledge of and participation in the admixture and intermingling of bottles in the course of distribution which resulted in a public sale to plaintiff on mortgage foreclosure of those they now claim.

The most defendant could claim under the facts in this case is *prima facie* unlawful possession of the property under the strict letter of the act which could as well be asserted in an action of replevin by the interested companies to recover their property. No inquisitorial proceedings were required to find it. Before making the complaint Watson knew who had it. There was no attempted concealment or denial of possession on plaintiff's part. His complaint followed a refusal to surrender possession under claim of ownership.

Under such circumstances resort to this drastic *quasi-*criminal law is questionable.   It is an anomalous piece of legislation at best, with the attributes of criminal and civil proceedings intermingled.   It provides for a sworn complaint, search warrant by which the property may be seized and the party in possession apprehended, to be followed by, in effect, a criminal prosecution before the magistrate, who is given exclusive jurisdiction to at the same time try title to the property, whatever its value, and try the party arrested for his alleged criminal conduct.   If he finds him guilty of possessing and using the property in violation of section 2 of the act "he must impose the penalty therein provided," which is imprisonment for the first offense of not less than 10 nor more than 90 days or a fine of $1 for each and every bottle so unlawfully possessed (increased to as high as $5 for subsequent offenses) "or both such fine and imprisonment in the discretion of the court."

The combined property of the 8 creamery companies for whom defendant made the seizure consisted of over 13,000 bottles worth, as found by the court, $654.90 which considerably exceeds the recognized jurisdiction of a justice of the peace, both as to value of property involved and amount of fine he may impose, on finding the accused guilty.   On the civil side of the proceeding the justice in case of conviction is required to "award the possession of property taken on such search warrant to the owner thereof," but, switching to the criminal side, the act requires him to turn over all fines collected under it "in the same manner and for the same purpose as criminal and misdemeanor fines are now disposed of."

Beyond the foregoing infirmities of the defense we are of the opinion that the trial court rightly held that by reason of participation and acquiescence in the established custom of indiscriminate use and inter-

mingling of their bottles amongst distributers of milk these companies at whose instance the search warrant issued are barred under the facts of the case from asserting ownership by estoppel *in pais*, equally available in courts of law as in equity.    *Barnard* v. *Seminary*, 49 Mich. 444.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.