CLOVER LEAF DAIRY CO. et al. v. VAN GERVEN et al.

No. 4677.   Decided July 13, 1928.   (267 P. 1020.)
Rehearing Denied Aug. 28, 1928.

*F. W. James,* of Salt Lake City, for appellants.

*Stewart, Alexander & Budge,* of Salt Lake City, for respondents.

THURMAN, C. J.

This is an action in equity instituted by several distinct and independent dairy companies, sellers and distributors of milk and cream, in Salt Lake City and vicinity, to restrain the defendants from using certain milk and cream bottles, milk cans, and carrying cases, of which plaintiffs allege they are the owners. The facts hereinafter stated, concerning which there is no substantial dispute, render it unnecessary to make a separate statement of the pleadings.

Before commencing this action the plaintiffs instituted several actions in replevin against the defendants to recover such bottles and milk equipment as were then in the immediate possession of the defendants. Redelivery bonds were given by the defendants, and it is alleged in the complaint herein that defendants by such means retain possession of such bottles, and are still using them in their business as milk distributors in the same territory in which the plaintiffs are carrying on their business. The case at bar was tried to the court without a jury. Findings were made in favor of the plaintiffs, and a decree entered thereon for the relief prayed for in the complaint. Defendants appeal to this court for a reversal of the judgment.

The uncontradicted evidence shows that plaintiffs, eight in number, are engaged in the business of selling and distributing milk and cream in Salt Lake City and vicinity, and that some of them have been so engaged ever since 1912. Others commenced business at a later date. Each one is a separate and independent company, but they have joined as plaintiffs herein for the purpose of this action. Each of the plaintiffs in the course of its business has purchased bottles directly from the manufacturer thereof, and caused its trade-mark and insignia to be blown on the bottles. None of said bottles so marked has ever been sold or disposed of by plaintiffs to any dairy company or seller of milk or cream. Each of the plaintiffs has had occasion in the course of its business to purchase plain or unmarked bottles, as necessity demanded, and use such bottles in carrying on its

business. In addition to the trade-mark or insignia blown on the bottles, each of the plaintiffs use a paper cap, which serves as a stopper for the bottles, and also has printed thereon the name of the plaintiff distributing the milk. The label printed on the stopper of the bottles has been the means by which the customer identifies the company distributing the milk. The name or insignia on the stopper does not always correspond with the trade-mark or insignia blown on the bottle.

The method adopted by each of the plaintiffs in distributing milk or cream to families or persons residing in residences or appartments has been to leave the bottles filled with the product on the back porch or doorstep of the customer, and take up the empty bottles left there by the customer. The number and kind of bottles so found by the distributor indicates the quantity and kind of the product wanted, unless accompanied by a special order. If no empties are furnished by the customer, it is an indication that no milk or cream is wanted. Where no empties have been furnished by the customer, should he desire milk or cream, the custom down to a recent date has been to require of the customer a deposit of 10 cents for each bottle, for which the distributor issues a ticket, guaranteeing to the customer a repayment of the same amount when he presents the ticket and a bottle fit for use. Any milk or cream bottle, whether marked with the trade-mark of any plaintiff, or plain or unmarked, will be accepted by the plaintiff and the money refunded, when the holder of the ticket returns a bottle or the number of bottles for, or on account of which, the ticket was issued. The plaintiffs have an agreement among themselves that each of them will accept a bottle or bottles with the trade-mark of any other plaintiff blown thereon, the same as if it were the trade-mark of the plaintiff distributing the milk.

The defendants are also sellers and distributors of milk and cream in the same territory in which plaintiffs carry on their business. The defendants are three in number,

and it appears from the evidence that there are numerous other sellers and distributors of milk and cream in Salt Lake City and county, other than plaintiffs and defendants. Neither of the defendants has a trade-mark of its own, but all of them use paper caps with their names thereon. All of them claim to have purchased the bottles they use from local dealers, dairy companies, secondhand and junk dealers, groceries, and from any other source in the community where such bottles were for sale. The evidence is conclusive to the effect that ever since plaintiffs put their trade-marked bottles into circulation in their business, they have each taken in exchange for their product any kind of milk or cream bottle fit for use, whether marked with the trade-mark of such plaintiff, or either of the plaintiffs, or whether marked at all. The witnesses for each of the plaintiffs testified that no request had ever been made to the customer to return the particular bottle delivered to him, or a bottle marked with the trade-mark of any of the plaintiffs. All they were concerned about was to see that they received in return a good milk or cream bottle fit for use in the business. None of the plaintiffs' witnesses claimed to know how many empty bottles they had received that may have been purchased by the defendants, nor how many of their bottles were in circulation for which the plaintiffs had received 10 cents, and which amount had never been redeemed by the customer. There is evidence also to the effect that 10 cents was more than the bottle cost, and that a failure to redeem the deposit by a return of a bottle inured to the advantage of the distributor.

Plaintiffs claim to have been injured by the custom in vogue in various ways, as follows: (a) It causes plaintiffs great expense in having to purchase additional equipment in carrying on the business; (b) the use of plaintiffs' bottles by defendants produces confusion in the trade generally, and particularly among the customers of the several plaintiffs, as the insignia or trade-mark on the bottles causes said customer to believe that the milk or cream is being

furnished by the plaintiff whose trade-mark is on the bottle, and that thereby several of the plaintiffs are deprived of the trade and business of such customers, which said plaintiffs are entitled to enjoy, and which said customers intend plaintiffs should have. It is also alleged by plaintiffs that the milk they produce and sell is of a superior quality, and that the sale of an inferior quality in their trade-marked bottles is an injury to their reputation.

There are two answers to this last contention: (1) As we have already stated, the evidence shows quite conclusively that the customer looks to the label on the paper cap used as a stopper to determine who has distributed the milk, and not the trade-mark blown on the bottle. There is no evidence that any distributor ever interferes with the cap on the bottle. (2) There is no evidence in the record, as we understand it, that the milk produced and sold by plaintiffs is of a superior quality to that produced and sold by the defendants, or other distributors.

As to the other cause of injury above referred to: No doubt plaintiffs are put to great expense in having to purchase additional bottles to take the place of those that are lost in the business, but there is no direct evidence that defendants have caused such loss. There is some opinion expressed to the effect that defendants have not purchased sufficient bottles to supply the milk they are furnishing, but such evidence is vague, uncertain, and inconclusive. It may also be a fact that the method employed has at times caused some confusion, and perhaps inquiry, especially where a customer should compare the name or insignia on the paper cap with the trade-mark on the bottle; but the evidence as to such instances is very slight, and also vague, indefinite, and unsatisfactory. In any event, no such instance was connected up with the defendants, or any of them. It was merely a vague allusion, that could just as well have applied to any other distributor in the common territory.

In addition to supplying homes and residences, as above described, both the plaintiffs and defendants supplied gro-

ceries, and perhaps other places of business. The method used in these cases was to supply the product desired in bulk, and take in exchange the same number of empty bottles, without regard to trade-marks or other marks, or whether the bottles were marked at all. It was simply an-indiscriminate exchange of milk bottles for milk bottles, without regard to marks or brands. Such appears to have been the method of conducting the business from the date of its commencement. Plaintiffs admit that, for all they know, some of the bottles they received in exchange were bottles which the defendants had purchased, and of which defendants were the owners.

In these circumstances it may well be questioned whether the transactions considered as a whole, running through a period of several years, did not constitute a sale of the bottles, rather than a bailment, as contended by the plaintiffs. 3 R. C. L. p. 73. Without deciding that question, however, let us consider the case from another angle. From a reasonably careful review of the entire record of the case, we cannot avoid the conclusion that the injuries of which the plaintiffs complain were primarily caused by their own careless and improvident manner of conducting their business. If in the beginning, when each of them secured its trade-marked bottles and commenced to use them, it had insisted upon its customers returning the same bottle, or one bearing the same trade-mark or insignia, and had held its customers responsible for so returning such bottles, the cause for this lawsuit would not have occurred.

If the reply to this should be that their customers would not have stood for the imposition of such a burden, and that plaintiffs would thereby have lost their trade, the answer is that, in any event, some such system would have to be adopted in the future, even if we felt it our duty to grant the relief prayed for in his proceeding. Plaintiffs would be compelled to treat their trade-marks as if they had some special significance and some special value to

the owners. It would not be in accord with the principles of equity to allow plaintiffs to put their trade-marked bottles into circulation, and exchange them indiscriminately for unmarked bottles, or bottles bearing the trade-mark of other companies, and then afford the plaintiffs a remedy by restraining others from using their trade-marked bottles, without requiring them to account for the bottles they had received in exchange.

Plaintiffs' excuse in the instant case for not accounting for such bottles as they may have received, or now have, belonging to the defendants, is that, as defendants' bottles are not trade-marked, plaintiffs have no means of knowing how many bottles, if any, they have belonging to the defendants, and insist that the burden was on the defendants to identify such bottles and prove their ownership. This the defendants cannot do. The burden of proof was on the plaintiffs to prove their case. They did not prove, and under the system adopted could not prove, that for every bottle of theirs which the defendants now have, or many have had, in the course of their business, plaintiffs have received in return a bottle belonging to one or the other of the defendants. This is the principal reason why it would be unjust and inequitable to grant the relief prayed for in this proceeding.

But, as already foreshadowed in what has been said, plaintiffs have in their own hands just as complete a remedy for the injuries complained as a court of ■ equity can afford them. They can commence now to do what we have suggested they should have done when they first put their trade-marked bottles in circulation. They can contract with their customers to return their trade-marked bottles or be responsible therefor. When they have once established that custom, their trade-mark will be of some value. It will be prima facie evidence of ownership, and the traffic in bottles bearing their trade-marks will either cease or be done at the peril of those who engage in the traffic.

In view of the conclusion we have reached, and the basis for such conclusion, it is unnecessary to consider or pass upon other questions discussed at considerable length by counsel for the respective parties. Some of the questions may have considerable merit, but we prefer to rest our decision upon the grounds above stated.

As it does not appear that a new trial of the case could result in any different conclusion, it is ordered that the judgment of the district court herein be reversed, and the cause remanded to said court, with directions to dismiss the action at respondents' cost.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.