No. 12,295.

DENVER MILK BOTTLE, CASE AND CAN EXCHANGE *v.* McKINZIE.

(287 Pac. 868)

Decided May 5, 1930.

Mr. NATHAN H. CREAMER, Messrs. QUIAT, GINSBERG & QUIAT, Mr. HARRY S. CLASS, for plaintiff in error.

Mr. J. PAUL HILL, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE Denver Milk Bottle, Case and Can Exchange was defeated in an attempt to have J. A. McKinzie restrained from using milk bottles that are owned, it is claimed, by members of the exchange.

According to the evidence, about 140,000 bottles of milk are sold in Denver each day. Each dairy uses bottles with its name blown in the glass. Some bottles were lost and some, perhaps, were stolen. Various efforts to remedy the evil were made by statute, ordinance and agreement. Section 3078, C. L., provides that persons engaged in bottling milk and cream for sale may adopt a mark of ownership to be stamped or marked on any bottle used in handling and transporting such product, and may file in the office of the secretary of state a description of the mark. It is made unlawful for any person to use any mark that has already been appropriated, and for any person other than the rightful owner to use any receptacle so marked "for any purpose or for the transportation or handling of any [other] article or product than designed or provided for by such branding." A Denver ordinance dealt with the same subject.

In January, 1925, The Denver Milk Bottle, Case and Can Exchange was incorporated. All of the members of the exchange, being engaged in bottling milk and cream for sale, filed with the secretary of state a description of the respective ownership marks appropriated by them and blown in the glass of their milk bottles. McKinzie is not a member of the exchange. He conducts a dairy outside of Denver. He admits that he has in his possession, and refuses to surrender, 110 milk bottles on which are the names of 16 different members of the exchange, there being one name, of course, on each bottle.

1. It is said by counsel for McKinzie that the exchange has no right to prosecute the suit; that only the members can complain of the unlawful retention and use of their bottles. We do not think so. In February, 1928, the exchange and its members made an agreement wherein it is stated that the purpose of the exchange is the collecting, conserving and retrieving lost, strayed and unlawfully appropriated milk bottles, milk cans and milk cases of its members, and that the exchange could do this to much better advantage than the several members could do by their several disunited efforts, and that the purpose of the agreement is to give the exchange full and ample power and authority in the premises. The agreement provides that the exchange shall have the right and authority, and it is made its duty, to collect, conserve and retrieve lost, strayed and unlawfully appropriated milk bottles, milk cans and milk cases of its members; and it is given the right and authority to institute in its own name actions of replevin or other actions for the recovery thereof. It is provided also that the exchange shall have the right and authority, and it is made its duty, "at any time that any person or persons, corporation or corporations take possession or use or threaten to unlawfully take possession or use any milk cans, milk cases or milk bottles of the respective members of the exchange, to institute injunction proceedings or any court proceedings that the exchange may deem

advisable to prevent the said unlawful possession and use of the said milk bottles, milk cans and milk cases and to collect damages that may be suffered by the exchange or its members by reason of said unlawful possession or use of the said milk bottles, milk cans and milk cases; any such action brought shall be brought in the name of the exchange." If a cause for injunction has been proven, the exchange has authority to prosecute the suit.

2. Another contention is that there is an adequate remedy at law, and, therefore, that a suit for injunction will not lie. We cannot sustain this contention. McKinzie not only retains and uses the 110 bottles that he now has, but he says that, unless restrained by the court, he will continue to use bottles marked with the names of "all of the seventy-five members of the association mentioned in the complaint." This presents a case for an injunction, if McKinzie does not have the right to use the bottles. The value of the bottles is so small that the cost and expenses incident to the prosecution of numerous actions of replevin or for damages—which would be necessary if McKinzie carries out his threat—would be prohibitory. The exchange tried replevin several times. In one such action (not against McKinzie) the value of the bottles was $6.12, and the costs and expenses amounted to $43. Though the exchange obtained judgment, the attorney's fee ($25), of course, could not be included in the judgment. In the other replevin cases the expense was five times as much as the recovery. In the circumstances, neither actions of replevin nor actions for damages would afford adequate relief; the preventive remedy of injunction is the only remedy that is adequate.

3. Counsel for McKinzie says that the exchange has failed to prove that its members own the bottles now in McKinzie's possession. The bottles in question bear the registered ownership marks of members, and the president of the exchange testified that all of the members of the exchange are using bottles bearing their respective marks of ownership. Among the bottles in Mc-

Kinzie's possession there are 43 bearing the ownership mark of the Windsor Farm Dairy Company, 16 bearing the ownership mark of the Beatrice Creamery Company, and 7 bearing the ownership mark of the Climax Dairy Company. Those companies are members of the exchange, and a representative of each testified that his company never sold any bottles bearing the ownership mark of the company. This evidence cast upon McKinzie the burden of explaining how he came into possession of the bottles. He says that he owns them, but his evidence of ownership is wholly insufficient to support a finding in his favor. Some witnesses for McKinzie said that they bought from retail dealers milk and the bottles containing it; but the evidence discloses that when they bought the milk they merely made a deposit of a few cents (less than wholesale cost) to insure the return of the bottle, and that when the dealer considered the customer trustworthy, no such deposit was required. Such a transaction is not a sale; and even if it were, the retailer could not pass title to property belonging to others. Assuming that a bottle was sold occasionally by a retail dealer, there is nothing to indicate that this was done with the knowledge or consent of the owner. No doubt some bottles of members of the exchange were sold unlawfully. McKinzie says that he acquired by purchase and exchange the bottles in his possession, but he failed to show that the persons from whom he obtained the bottles acquired them lawfully, or even that the bottles that he exchanged for them belonged to him, or to any person other than members of the plaintiff exchange.

4. It is unnecessary to discuss other points suggested by McKinzie's counsel. They are devoid of merit.

The judgment is reversed, and the cause is remanded for further proceedings in harmony with the views expressed in this opinion.

MR. JUSTICE ADAMS did not participate.