CITY DAIRY COMPANY *v.* USERVO, INCORPORATED

[No. 15,113.   Filed January 28, 1936.]

376

*Shively & Arnold,* for appellant.

*Jones, Obenchain & Butler,* for appellee.

WOOD, J.—Appellee brought suit against the appellant to perpetually enjoin it from the use of certain milk bottles in the distribution and sale of its dairy products, which bottles were specially manufactured and leased by appellee to dairymen, for use in the conduct of their business. The issues consisted of a complaint in one paragraph, an affirmative paragraph of answer on behalf of appellant, to which the appellee filed two affirmative paragraphs of reply. The cause was submitted to the court for trial without a jury. The facts were all stipulated, and consisted of a substantial repetition of the affirmative pleadings filed by

the respective parties. So far as pertinent to our purpose they may be summarized as follows:

Appellee, from July 1, 1931, until the commencement of this action in the lower court, had been engaged in the manufacture, licensing, and leasing of bottles used solely for containing and distributing milk, cream, and buttermilk. When appellee began its business it adopted as a distinguishing and identifying mark, the word "Uservo," which was blown into the body of each bottle, and the letter U was blown into the bottom of each bottle. Appellee was the exclusive user of such distinguishing marks upon its bottles in the United States. On the exterior lower half of the top rim of each bottle corrugations in the surface were blown to form what was known as "the hold fast grip," thus making appellee's bottles readily distinguishable from those owned and used by the appellant. Some of appellee's bottles were used in St. Joseph County, Indiana, by bottlers and distributors of milk, cream, and buttermilk, under a license by appellee, all such licensees in effecting distribution of their dairy products to customers in the usual course of business sold only the contents of the bottles, and not the bottles themselves, and received back from the customer on subsequent delivery, the bottles used on prior delivery. Appellee had never permitted the use of its bottles by anyone other than its licensees and their customers. Appellant during all the time in question was engaged in the business of bottling and selling at wholesale and retail, milk, cream, and buttermilk in South Bend, and in its business filled not less than 6,700 bottles daily, delivering same to several hundred customers in lots consisting of from one to ten bottles. Appellee at no time licensed or consented to the sale, lease, licensing, or permitting in any manner the use of its bottles for bottling and distributing dairy products to or by any other per-

son, firm or corporation, except only such as executed such license agreement, and at all times retained the title and ownership of said bottles. Appellant was not licensed by appellee to use its bottles, nor did appellant have any permission from appellee of any kind or character whatever to use them. Continuously after May 1, 1933, and up to the time of the trial of this cause in the lower court appellant has used appellee's bottles in the conduct of its business, with knowledge at all times that the bottles were the sole property of appellee, that it had prohibited their use by appellant in conducting its business. Appellant refused to desist from such use, and though notified by appellee not to do so, at all times persisted therein, threatened to and would continue to use appellee's bottles unless restrained and enjoined therefrom by order of court. For a long time prior to the commencement of this action by the appellee a custom had prevailed among the bottlers and distributors of milk, cream, and buttermilk to receive from the customers in return for bottles in which they had delivered their products to such customer, the bottles of other bottlers and distributors, which then became intermingled with their own and to use them in the conduct of their own business. This custom continued after appellee inaugurated its business, and as a result thereof, all bottles with the mark "Uservo" thereon, held and used by appellant, came into its possession. Certain dealers during the existence of this custom wilfully refused to supply themselves with enough bottles to meet their demands, and did wilfully rely upon the use of the bottles of other dealers to meet their requirements, thus requiring such other dealers to supply themselves with more bottles than were required in their own business. Appellee never consented to the continuance or perpetuation of said practice and usage, but on the contrary continuously, persistently, and pro-

gressively endeavored to terminate the same. April 28, 1933, appellee served notice on all bottlers and distributors of milk, cream, and buttermilk, not its licensees, including appellant, that its licensees had no right, either directly or indirectly, to engage in any practice or custom of interchanging bottles, and that any bottles of such non-licensed dealers which had come into possession of appellee or its licensees would be returned to the rightful owners. At the same time appellee made a demand upon such non-licensed dealers, including appellant, to return to it any of its bottles in their possession. From and after May 1, 1933, appellee's licensees ceased the custom of interchanging bottles with dealers not licensed by appellee to use its bottles marked "Uservo," and refused to receive from their customers, the bottles of other dealers in exchange for the bottles of appellee marked "Uservo." At all times after May 4, 1933, and before the commencement of this action, appellant refused to receive from appellee bottles of appellant which had come into its possession after the cessation of the custom of interchanging bottles, refused to deliver the bottles of appellee which it had in its possession to appellee and persisted not only in withholding them, but in using them in the distribution of its milk, cream and buttermilk, conformable to the usage theretofore existing among bottlers and distributors of dairy products. The cost of each of said bottles was 2⅓ to 4⅓ cents. The average number in daily use in St. Joseph County, Indiana, was approximately 57,000, the exact number in possession of appellant at any one time was known to appellant, but unknown to appellee, but the number of such bottles being used by appellant had at no time after May 1, 1933, been less than 5,000. The appellee's bottles were of great value, the source of great profit to it, and the

damage suffered by appellee as a result of appellant's use of them was incommensurable.

On the facts as thus stipulated, the court found for the appellee and entered judgment against the appellant perpetually enjoining it from the use of appellee's bottles. Within proper time the appellant filed a motion for a new trial, alleging as causes therefor, that the decision of the court was not sustained by sufficient evidence and was contrary to law. This motion was overruled. Appellant appeals, assigning this action of the court as the only error for reversal.

Appellant's first contention is that appellee's licensees were parties to and had indulged in a usage of long standing, prevailing among dairymen in the locality in question, of the indiscriminate exchange and use of milk bottles, which it would be inequitable to destroy; that such licensees, because of their conduct, were estopped from interfering with such usage and the rights and interests of the various parties growing up thereunder by resort to equity. That what such licensees cannot do directly they cannot do indirectly through another, in this case, the appellee.

"The term usage, in its narrowest sense, denotes merely a uniform course of conduct in some particular business or calling, even though it be that but of one person. A custom, on the other hand, is something which has by its universality and antiquity acquired the force and effect of law, in a particular place or country, in respect to the subject-matter to which it relates. Custom is general practice, judicially noticed without proof. Usage is the fact. Custom is the law." 27 R. C. L., sec. 1, p. 152; *Morningstar* v. *Cunningham* (1887), 110 Ind. 328, 11 N. E. 593.

In order that a usage may be binding it must have been peaceably acquiesced in by those whose rights are

to be affected by it and not subject to contention and dispute. *Carlisle* v. *Wallace* (1859), 12 Ind. 252; *Franklin, etc., Co.* v. *Humphrey* (1879), 65 Ind. 549; 27 R. C. L., sec. 3, p. 154; 17 C. J., sec. 32, p. 467. The party who seeks to avail himself of a usage in a particular trade or business must show that such usage is known, that it is uniform, reasonable, certain, not contrary to law, or opposed to public policy. *High Wheel, etc., Co.* v. *Journal Co.* (1912), 50 Ind. App. 396, 98 N. E. 442; *Morningstar* v. *Cunningham, supra.* Local customs or particular usages must be proved like other facts when they have not risen to the dignity of the law. *Barlow* v. *Lambert* (1856), 28 Ala. 704; 27 R. C. L., sec. 1, p. 153. A mere accommodation usage cannot establish a custom. *Cincinnati, etc., Co.* v. *Boal* (1860), 15 Ind. 345, and a custom contrary to law is not valid. *Bauer* v. *Samson Lodge* (1885), 102 Ind. 262, 1 N. E. 571.

Where the gist of an action is the enforcement of contractual rights, then proof of a usage may be resorted to for the purpose of ascertaining the otherwise uncertain meaning of the contract and the real purpose and intent of the parties thereto, but it cannot be resorted to for the purpose of varying, changing or adding to the terms of a contract, complete and certain in its terms. *Piggly-Wiggly Stores* v. *Lowenstein* (1925), 197 Ind. 62, 147 N. E. 771; *Morningstar* v. *Cunningham, supra; Barlow* v. *Lambert, supra.*

In the case under consideration, appellee is not seeking the enforcement of contractual rights, but is endeavoring to enjoin the commission of alleged tortious interference with its property rights by appellant. "The effect of usages and customs as evidence in cases of torts is very limited, and does not extend to proving or disproving the commission of a specific act by evidence of a certain custom to do or not

to do it." *Limbert* v. *Waznitsky* (1921), 191 Ind. 419, 133 N. E. 128. "Usage or custom cannot prevent conduct which would otherwise be regarded as tortious from being illegal. . . . So the right to take the personal property of another is subversive of the fundamental rights of property and cannot be justified on the ground of custom." Note 41 L. R. A. (N. S.) 555; 27 R. C. L., sec. 16, p. 167; *Commonwealth* v. *Doane* (1848), 1 Cush. (Mass.) 5.

"To constitute an estoppel by conduct, there must be: 1. A representation or concealment of material facts. 2. The representation must have been made with knowledge of the facts. 3. The party to whom it was made must have been ignorant of the truth of the matter. 4. It must have been made with the intention that the other party should act upon it. 5. The other party must have been induced to act upon it." *Hosford* v. *Johnson* (1881), 74 Ind. 479, 485; *Hartlep* v. *Murphy* (1926), 197 Ind. 222, 150 N. E. 312; *Pierce* v. *Vansell* (1905), 35 Ind. App. 525, 74 N. E. 554; *Taylor* v. *Griner* (1914), 55 Ind. App. 617, 104 N. E. 607. There can be no estoppel without fraud and the doctrine of estoppel cannot be applied where everything in relation to the transaction is equally well known to both parties. *Tinsley* v. *Fruits* (1898), 20 Ind. App. 534, 51 N. E. 111.

The burden was upon appellant to prove the essential allegations of its affirmative paragraph of answer, which was founded upon the theory of estoppel because of an established usage. Recurring to the resume of facts heretofore set out and testing their sufficiency to establish such estoppel, by the principles of law controlling under such circumstances as above summarized, it is manifestly clear that the trial court was warranted in finding that they did not possess enough potency to discharge the burden cast upon appellant.

To sustain its contention, appellant relies almost exclusively upon the cases of *Stone Road Dairy Co.* v. *Humes* (1922), 220 Mich. 57, 189 N. W. 883, and *Clover Leaf Dairy Co.* v. *Van Gervin* (1928), 72 Utah, 290, 269 Pac. 1020. We do not question the soundness of the reasoning or the correctness of the result reached by the court in either of these cases as applied to the facts involved. But the facts in the instant case and in those two cases are so vastly different that they cannot be regarded as controlling precedents for our guidance in this case. In fact, the court, in deciding the Clover Leaf case, incorporated in its opinion this very significant language: "If in the beginning, when each of them secured its trade-marked bottles and commenced to use them, it had insisted upon its customers returning the same bottle, or one bearing the same trade-mark or insignia, and had held its customers responsible for so returning such bottles, the cause for this lawsuit would not have occurred."

Appellant next contends that the appellee comes into a court of equity with unclean hands; in that it seeks to preserve such part of the alleged usage as is beneficial and perhaps indispensable to it, namely, the right through its licensees to pick up, even inadvertently, the bottles of appellant and to exercise dominion and control over them, and at the same time invokes the power of the court to destroy the same reciprocal right existing in appellant under a usage long extant. The trial court found against appellant upon this contention. There is ample evidence to sustain such finding and this court will not disturb it.

Appellant also contends that the appellee comes into a court of equity with unclean hands in that it is undertaking to create a monopoly for itself in the use of its milk bottles in St. Joseph County. To constitute a monopoly, there must be conduct of

some kind which results in and has for its purpose the unlawful restraint of trade, stifling of competition, control of production or supply, fixing of prices, deterioration of quality of a commodity or other acts of like character and purpose. *State ex rel. Lesh* v. *Indiana, etc., Products* (1926), 198 Ind. 288, 153 N. E. 488; 19 R. C. L. Subject Monopolies and Combinations, sec. 17, p. 26, sec. 19, p. 33, sec. 20, p. 36, sec. 21, p. 38; 41 C. J., sec. 12, p. 85. The trial court found that the enterprise in which appellee was engaged did not constitute a monopoly. The evidence supports the finding.

Finally appellant insists that the appellee has an adequate remedy at law. The trial court also found against appellant on this contention. The protection of property rights is within the power and jurisdiction of courts of equity. *In re Sawyer* (1888), 124 U. S. 200, 8 S. Ct. 482, 31 U. S. Law Ed. 402; *Choppell* v. *Stewart* (1896), 82 Md. 323, 33 Atl. 542, 37 L. R. A. 783, 14 R. C. L. sec. 66, p. 365.

The same contention was made in the case of *Denver, etc., Exchange* v. *McKenzie* (1930), 87 Colo. 379, 287 Pac. 868, where the facts and circumstances were quite similar to those in the case at bar. In disposing of such contention the court said (p. 382) : "Another contention is that there is an adequate remedy at law, and therefore, that a suit for injunction will not lie. We cannot sustain this contention. McKinzie not only retains and uses the 110 bottles that he now has, but he says that, unless restrained by the court, he will continue to use bottles marked with the names of 'all of the seventy-five members of the associatioon mentioned in the complaint.' This presents a case for an injunction, if McKinzie does not have the right to use the bottles. The value of the bottles is so small that the cost and expenses incident to the prosecution of numerous actions of replevin or for damages—which would

be necessary if McKinzie carries out his threat—would be prohibitory. The exchange tried replevin several times. In one such action (not against McKinzie) the value of the bottles was $6.12 and the cost and expenses amounted to $43. Though the exchange obtained judgment, the attorney's fee ($25), of course, could not be included in the judgment. In the other replevin cases the expense was five times as much as the recovery. In the circumstances, neither actions of replevin nor actions for damages would afford adequate relief; the preventive remedy of injunction is the only remedy that is adequate."

In *Renner, etc., Co.* v. *Rolland* (1917), 96 Ohio St. 432, 441, 118 N. E. 118, another case where similar facts were involved and the same contention made, the court said: "The petition avers that the defendant has, ever since the 16th day of March, 1916, continued to gather, purchase, traffic, and otherwise take possession of the bottles of the plaintiff; that he threatens to and will, unless restrained by the court, continue to gather, purchase, traffic in, and take possession of said bottles, and will sell and otherwise dispose of the same, that the plaintiff has suffered and will continue to suffer great and irreparable damages; that it has no adequate remedy at law; and that it will be put to a multiplicity of suits in order to recover its property unless defendant be restrained by the court. It is clear that these averments are sufficient to authorize the court to grant a perpetual injunction if the allegations are sustained by proof."

We think the reasoning in those two cases is applicable to the facts presented by the receord in this case and furnishes ample precedent for the action of the trial court.

Finding no error, the judgment is affirmed.