HERZ STRAW CO., INC. *v.* CAPITOL PAPER CO.

[No. 27,314. Filed January 29, 1940. Rehearing denied February 28, 1940.]

*Jack I. Kahn* and *Richard L. Ewbank,* both of Indianapolis, for Appellant.

*Samuel J. Mantel* and *George P. Doyle* and *Wm. F. Elliott,* all of Indianapolis, for Appellee.

SHAKE, C. J.—Appellant sued the appellee for $1,050 for merchandise sold and delivered to the appellee. Appellee answered by way of set-off that the account was for $875, and that it was entitled to a credit for $860.25, leaving unpaid a balance due of $14.75, which it had tendered into court.

We shall briefly summarize the allegations of appellee's affirmative answer. In 1931 appellee purchased from the appellant and paid for a quantity of soda straws. The appellant's salesman stipulated in the appellee's order: "Floor stock guaranteed against our decline to July 1, 1932," and in the acknowledgment of the order sent to the appellee by the appellant it was recited: "Floor stock guaranteed against decline in our price to July 1, 1932." The appellee contends that by usage and custom prevailing in the business, the provisions, "guaranteed against our decline," and, "guaranteed against decline in our price," had reference to a decline in the market price of soda straws of similar kind and quality; that "floor stock" was understood to mean merchandise purchased by the appellee from the appellant and on hand at the time a market decline occurred; that prior to July 1, 1932, the soda straw market did decline, and that at the time the appellee had on hand a large stock of merchandise purchased from the appellant, and that by reason of said decline the appellant became indebted to the appellee in the sum of $860.25. This is the history of the credit which appellee claims to be entitled against the demand sued on. In 1933 appellee purchased from appellant 175 additional cases of soda straws at $6 per case, aggregating $1,050, and by way of inducement received from appellant 35 cases for which no charge was made, making a total of 210 cases. This is the demand sued on in appellant's complaint. By a process of reasoning, which we are unable to follow, appellee seems to contend that the cost to it of the 210 cases was $1,050, or $5 per case, but that since it was to pay for only 175 cases, the appellant's demand should be for $875. If credit should be allowed for the sum of

$860.25, claimed by the appellee on account of the former transaction, the balance due would be $14.75.

The trial court made a general finding in appellant's favor for $250. There was no specific finding on the issue presented by the appellee's answer of set-off. We are not advised how the court arrived at the amount of the judgment, but if it found that there was due the appellant the sum sued for, to-wit: $1,050, less the appellee's set-off of $860.25, the calculation was substantially consistent. An allowance for interest would not have been improper under the issues and proof. A defect in the form of a verdict or finding, apparent on the face of the record, cannot be presented by a motion for a new trial, as the appellant has attempted to do here. There was no motion for a venire de novo or to modify the judgment, hence no question is presented with respect to the form of the judgment.

In various ways appellant has presented two questions for our consideration. These may be stated, informally, as follows: (1) whether appellant's demand was properly for $875 or $1,050, and, (2) whether appellee was entitled, under the law and the evidence, to its set-off of $860.25. We shall consider these propositions in reverse order.

There was no substantial conflict in the evidence as to the amount of the appellant's demand. It sold the appellee 175 cases of merchandise at an agreed price of $6 per case, or $1,050. The matter of the 35 cases donated is not involved and the fact that the appellant billed the appellee for $875 through error was not binding on the appellant. Under the undisputed evidence there was due the appellant the sum of $1,050, unless the appellee was entitled to a set-off.

Whether appellee can claim credit for its alleged set-off of $860.25 depends upon whether it was entitled to offer evidence to establish that by usage and custom the provisions, "floor stock guaranteed against our decline to July 1, 1932," and, "floor stock guaranteed against decline in our price to July 1, 1932," as used in the order and acknowledgment, respectively, meant a market decline in the sale price of soda straws of similar kind and quality, rather than a decline of appellant's sale price. "Usage" and "custom" as used in the law have different shades of meaning, but we do not deem it necessary to distinguish them here. *Morningstar* v. *Cunningham* (1887), 110 Ind. 328, 11 N. E. 593, 59 Am. Rep. 211; *City Dairy Co.* v. *Uservo, Inc.* (1936), 101 Ind. App. 375, 199 N. E. 457. It is proper under some circumstances to resort to usage and custom to ascertain the sense in which particular words and terms appearing in a contract were used, and this may be true even though such words and terms ordinarily have a definite and certain meaning. Usage or custom may never be utilized, however, to vary or contradict the terms of a clear and unambiguous contract. In other words, an ambiguity or uncertainty must appear in the contract before it is proper to turn to usage and custom to determine its meaning. *Van Camp Packing Company* v. *Hartman* (1890), 126 Ind. 177, 25 N. E. 901. To hold otherwise would be to admit the total inadequacy of our language as a safe medium of expression and subject every agreement, however definite its terms, to the uncertainties of extraneous proof or judicial construction. Manifestly, one who sells goods to another has the right to protect the purchaser against either a future decline of his own selling price or against a future market decline. Either would be the legitimate

subject of contract. If the words, "guaranteed against our decline," or, "guaranteed against decline in our price," can be twisted and distorted into meaning, "guaranteed against any decline in the market price," by resort to proof of usage and custom, the question might well be asked, what words could a seller choose to indicate that he was guaranteeing the purchaser against a decline of his own selling price? If it may be established by proof of usage that "our price" means "market price," how would one say "our price" when he means "our price?"

What we have said answers all the propositions presented for our consideration except certain technical objections as to the sufficiency of the appellant's brief. We find the brief to be in substantial compliance with the rules.

Judgment reversed, with directions to sustain the motion for a new trial.

Note—Reported in 24 N. E. (2d) 921.