## ALBERT LEA CO-OPERATIVE CREAMERY ASSOCIATION v. ALBERT LEA MILK COMPANY.[1]

November 13, 1942.

No. 33,260.

*Meighen, Knudson & Sturtz,* for appellant.
*Floyd V. Nichols,* for respondent.

LORING, JUSTICE.

This action in replevin was originally commenced in justice court to recover possession of six gross of "Cream Top" milk bottles. Plaintiff had judgment, and defendant appealed to the dis-

[1]Reported in 6 N. W. (2d) 243.

trict court, where the case was tried without a jury and findings of fact, conclusions of law, and order for judgment made in favor of plaintiff.

The questions presented are (1) whether plaintiff was entitled to possession of the bottles, and (2) whether it was estopped from asserting its right to possession. Defendant moved for amended findings or a new trial. Both motions were denied, and defendant appeals from the order of denial. The motion for amended findings of fact and conclusions of law is not appealable. We consider only the appeal from the order denying a new trial.

Both parties have been engaged in the retail and wholesale milk business in the city of Albert Lea. In April 1940, plaintiff purchased the right to use a patented milk bottle known as the "Cream Top" bottle. These bottles come in quart size and have an enlarged or bulging neck into which the cream from the milk in the bottle rises and remains. The patent also covers a device to be inserted through the mouth of the bottle which closes the constricted neck of the bottle below the bulge, thus preventing the milk from mixing with the cream when it is poured off.

Plaintiff at once commenced to use these bottles for substantially all of its whole milk products dispensed in quart sizes except those disposed of in paper containers. It used straight-necked bottles for buttermilk and chocolate milk and also for its products sold in pints and half-pints. It notified defendant and other milk dealers that it had purchased the exclusive right to use these bottles in Albert Lea. Prior to that time all the milk companies in Albert Lea had customarily picked up whatever straight-necked bottles their customers might have on hand at the time milk was delivered. This was done regardless of whose bottles they were. At first a deposit had been required to insure the return of bottles, but that practice was discontinued because of the burden of accounting, and thereafter the dealers relied on the obligation of the customers to return the bottles.

After plaintiff commenced using the "Cream Top" bottles, it was discovered that other milk dealers were picking them up along

with the straight-necked bottles and requiring plaintiff to exchange straight-necked bottles in order to get the "Cream Tops." There was no evidence in the record that any of the other milk dealers, or this defendant, ever used "Cream Top" bottles for vending their own milk.

In September 1940, the attorney for plaintiff wrote defendant reciting plaintiff's purchase of the franchise for the exclusive use of "Cream Top" bottles in Albert Lea and advising that plaintiff was using such bottles almost exclusively for the delivery of its whole milk in Albert Lea. He stated: "It is the desire of the Co-operative Creamery that these bottles be not exchanged or picked up by your drivers as considerable confusion has arisen with reference to distribution of same." He complained that drivers of other companies picked up these bottles, that this was an inconvenience to plaintiff, and in effect demanded that defendant's drivers refrain from picking up the "Cream Top" bottles and that all such bottles then in the possession of defendant be turned over to plaintiff.

This demand did not result in the abandonment of the practice by the drivers of other dealers of picking up the "Cream Top" bottles, and defendant refused upon demand to turn over to plaintiff the six gross of "Cream Top" bottles here involved. The justice court action followed.

Defendant relies on such cases as Stone Road Dairy Co. v. Humes, 220 Mich. 57, 189 N. W. 883, and Clover Leaf Dairy Co. v. Van Gerven, 72 Utah, 290, 269 P. 1020, 60 A. L. R. 281, where ordinary straight-necked milk bottles were involved and where the custom of drivers indiscriminately to pick up the bottles of other companies had become well established. We do not consider these cases in point. Here plaintiff had the exclusive right to use the "Cream Top" bottles and had so notified its competitors, including defendant. Furthermore, it had warned defendant not to permit drivers to pick up these bottles. Thereby it prevented the subjection of these bottles to the general custom which had prevailed in the city in regard to straight-necked bottles, and it was

entitled to the possession of those bottles wherever it found them. The contention of defendant that plaintiff sold the bottles to its customers with the milk is wholly untenable. Plaintiff merely permitted the customer to retain the bottle until it was empty and could be returned. No deposit was required. It relied on the implied obligation to return the bottles when empty. Cream Top Bottle Corp. v. Bailes (10 Cir.) 62 F. (2d) 714, does not persuade us that title passed or that plaintiff was estopped to claim its bottles. There the patentee sought to restrain indiscriminate use of its bottles by dairies where no effort was made by any of them to return the identical bottles to the licensee. Other considerations than those here presented controlled decision in that case.

The order appealed from is affirmed.