SUMMERS, Justice
(dissenting).
Assuming the majority properly concluded that the Commission lease to Cargill grants an exclusive right to operate a public grain elevator in the port area on property belonging to the Commission, I am nevertheless unable to agree with the result reached. I believe the contention of the Commission to be valid that there is nothing in the law which authorizes the Commission to grant an exclusive right, franchise or monopoly to operate a grain elevator or elevators in the port area
Counsel for the Commission contend, and the majority appears to concede, as it must, that a public body has no power or authority to grant an exclusive franchise to private corporations, unless the power and authority has been delegated to it either expressly or by necessary implication in the language of a constitutional or legislative enactment. New Orleans City and Lake R. Company v. City of New Orleans, 44 La. Ann. 728, 11 So. 78 (1892); 12 McQuillan, Municipal Corporations § 34.23 (1950). This rule of law has particular vitality in Louisiana for the Constitution of our State prohibits monopolies, or combinations to monopolize trade or commerce (La.Const. art. 19, Sec. 14) and directs the Legislature to enact general laws to prohibit monopolies (La.Const. art. 13, Sec. 5).
Unquestionably the highest authority supports the view that monopolies, in our law, like in the common law and the Federal Law, are considered odious, inimicable to the public welfare and against public policy. Greater Baton Rouge Port Comm. v. United States, 5 Cir., 287 F.2d 86, cert, denied 368 U.S. 985, 82 S.Ct. 600, 7 L.Ed. 2d 523 (1961); Schwab v. Moving Picture Machine Operators Local No. 159 of International Alliance of Theatrical Stage Employees & Moving Picture Machine Operators of U. S. and Canada, 165 Or. 602, 109 P.2d 600 (1941); City Dairy Co. v. Uservo, Inc., 101 Ind.App. 375, 199 N.E. 457 (1936); Georgia Fruit Exch. v. Turnipseed, 9 Ala.App. 123, 62 So. 542 (1913); State v. Standard Oil Co., 49 Ohio St. 137, 30 N.E. 279, 15 L.R.A. 145 (1892); Richardson v. Buhl, 77 Mich. 632, 43 N.W. 1102, 6 L.R.A. 457 (1889). Any interpretation of the disputed lease, therefore, must *741 be influenced by these constitutional and jurisprudential declarations of the public policy of the state and nation.
With this background in mind, we refer to the pertinent constitutional provision creating the Commission and defining its power and authority, viz:
“The Commission shall have authority to make and enter into contracts, leases and other agreements with railroads, trucking companies, barge lines and with any and all companies interested in the transportation, storage and shipping of goods and other products, whether by rail, truck line, barge line, ocean going vessels or otherwise for the use of facilities administered by the Commission or any part or portion thereof, for a period of time not exceeding forty (40) years. No exclusive franchise, however, shall be granted to any carrier.” La.Const. art. 6, Sec. 29 (1921) as amended.
In my opinion this constitutional provision only grants authority to the Commission to lease the facilities it administers for a limited time, and the language of the section contemplates that these leases shall be with “railroads, trucking companies, barge lines and with any and all companies interested in the transportation, storage and shipping of goods and other products, whether by rail, truck line, barge line, ocean going vessel or otherwise.” Obviously, all references in the section are to carriers of one type or another and the whole meaning to be derived from this provision is that it constitutes an authorization to lease the Commission facilities to carriers, providing that “no exclusive franchise * * * shall be granted to any carrier.”
It is strained interpretation to seize upon the one word “storage”, as the majority did, to support its conclusion that the prohibition against granting exclusive franchises did not apply to Cargill because it was engaged in the “storage” of grain and was not a “carrier”. To begin with, it was not necessary for Section 29 to prohibit the granting of franchises to carriers, and Section 29 cannot have the effect of restricting the prohibition against monopolies to carriers alone, for, as I have shown, two constitutional provisions already existed which prohibited exclusive franchises or monopolies generally. The language of Section 29 declaring that no exclusive franchise shall be granted to any carrier was, therefore, simply a reiteration of an already well recognized policy of the State.
If we consider Section 29 in the light of the rule that a grant of an exclusive privilege or franchise must be authorized either expressly or by necessary implication, we find that the section cannot sustain the position of the majority. No language is contained in the section which authorizes the Commission to grant an exclusive privilege, franchise or monopoly. The ' only language which makes any reference to exclusive franchises is the language of the *743 section which prohibits the granting of an exclusive franchise to carriers. Not only does this language not imply that exclusive privileges may be granted, it simply makes emphatic a prohibition which the law already recognized.
Moreover, on the record I would say that Cargill is a “carrier” within the contemplation of the prohibition contained in Section 29, and there is, therefore, an express sanction against granting an exclusive privilege to Cargill. To support this conclusion, the record will show that Cargill owns a barge line and the facilities leased by Cargill from the Commission are devoted almost exclusively to the loading and unloading of grain by Cargill’s barges. It will not do, therefore, to say that the exclusive right was granted to Cargill as the operator of a grain elevator when Cargill is also a carrier. The prohibition of Section 29 applies to “carriers” regardless of what other business or activity they may be engaged in. And, as the record shows, Cargill is indisputably a “carrier”, even though it engages in other activities and is also operator of a grain elevator.
Thus, while designated as a public gram elevator, the present facility operated by Cargill in Baton Rouge handles practically no grain other than that owned by Car-gill. It was principally because of this monopoly that the establishment of another grain elevator within the port area was sought and this controversy was provoked. It is my view, therefore, that the exclusive grant to Cargill directly contravenes the constitutionally declared public policy of this state; and, furthermore, the Commission is not authorized either expressly or by necessary implication by any law in this state to grant such an exclusive privilege, franchise or monopoly to Cargill.
Aside from these fundamental objections to the majority opinion, I believe the language employed may, in some instances, bring about more uncertainty and controversy than this suit for a declaratory judgment was intended to settle. For instance, the opinion declares that Cargill has “the exclusive right to operate a public grain elevator within the Port Area of the Port Commission * * Standing alone, this declaration may well be construed to mean that no owner of private property situated within the four parish port area could sell or lease his land to a grain merchant for the development of a privately financed, privately owned, public grain elevator. If given this meaning, the language of the opinion would do violence to the constitutional principle that owners of private property may not be deprived of their property without due process for those people are not parties to this suit. Such a holding would, moreover, repudiate the holding in Lake Providence Port Commis *745 sion v. Bunge Corp., La.App., 193 So.2d 363 (cert, denied, 250 La. 269, 195 So.2d 147).
The opinion urgently requires clarification.
I respectfully dissent.
JUSTICES SANDERS, SUMMERS and BARHAM are of the opinion a rehearing should be granted.