INTERNATIONAL ALLIED PRINTING
TRADES ASS'N et al. v. MASTER
PRINTERS UNION OF NEW JERSEY.
No. 162.

District Court, D. New Jersey.

Aug. 2, 1940.

Meyer M. Semel, of Newark, N. J., for compláinants.

Morris G. Fredman, of Jersey City, N. J., for defendant.

WALKER, District Judge.

### Findings of Fact

This matter comes before the Court, without a jury, and the following are the facts found specially:[1]

1. International Allied Printing Trades Association (hereinafter called "Allied") is a voluntary unincorporated association or union of working men (printers), consisting of more than seven members, composed of the International Typographical Union of North America, the International Printing Pressmen and Assistants' Union, the International Brotherhood of Bookbinders, the International Stereotypers and Electrotypers' Union, and the International Photo-Engravers' Union, with headquarters and principal office in the City of In-

---

[1] Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

dianapolis, County of Marion and State of Indiana.

2. International Typographical Union (hereinafter called "Typographical") is a voluntary association and a trade union composed of working men (printers), commonly known as "Typographers", consisting of more than seven members, with its headquarters and principal office in the City of Indianapolis, County of Marion and State of Indiana.

3. Allied and Typographical state they bring this action by Printers League of New Jersey, also known as Union Printers League of New Jersey [2] (hereinafter called "Printers"), an unincorporated voluntary association or trade union made up of union working men (printers), residing in the State of New Jersey and State of New York, as attorney in fact; however, they are the real parties in interest and the action is for them and by them.

4. Allied is composed of a board of officers, consisting of a president, vice president, secretary, treasurer and an executive council, and all of said officers and members of the executive council are citizens and residents of states other than New Jersey.

5. Typographical is composed of a board of officers, consisting of a president, vice president, secretary, treasurer and an executive council, and all of said officers and members of the executive council are citizens and residents of states other than New Jersey.

6. Some of the members of Allied and Typographical are citizens of the State of New Jersey.

7. On September 26, 1939, the United States Patent Office registered Allied's label as a trade-mark under #371428, for use on certain goods in Class 37 (paper and stationery).

7A. On January 16, 1914, Allied filed in the office of the Secretary of the State of New Jersey, its application for the registration of its label under the laws of New Jersey.

8. On September 26, 1939, the United States Patent Office registered Typographical's label as a trade-mark under #371429, for use on certain goods in Class 37 (paper and stationery).

9. The defendant, Master Printers Union of New Jersey (hereinafter referred to as "Masters"), is a corporation incorporated in the State of New Jersey on May 5, 1936.

10. On May 2, 1936, the defendant, Masters, filed in the office of the Secretary of State of New Jersey, its statement for the registration of the trade-mark "Master Printers Union Label of New Jersey", under the laws of New Jersey.

11. Allied and Typographical by their amended complaint seek to restrain the alleged infringement of their respective trade-marks and to restrain the alleged unfair competition in the defendant's use of a label similar to plaintiffs' trade-marks, and such other relief as may be granted.

12. Plaintiffs have not established an actual or an immediately threatened use of the defendant's label in interstate commerce.

13. The plaintiffs have spent money and have done many things to advertise their respective trade-marks and enhance the value of their good will, all of which are here sought to be protected, and the value of each is in excess of $3,000.

14. Allied and Typographical permit printing establishments throughout the United States to place the Allied or Typographical trade-marks upon their products when same are done by their members, under their supervision and control. In order to regulate this, they have organized throughout the several states of the Union and the counties and municipalities thereof, branches commonly known and designated as "Locals", which are also authorized to permit such a use subject to the aforesaid supervision or control.

15. Hudson County Allied Printing Trades Council (hereinafter referred to as "Hudson Allied"), while not formally a party to this case, is a local organized by Allied, and the action it brought in the Court of Chancery of New Jersey involves a label substantially identical with the trade-mark of Allied herein. (It is to be noted that the trade-mark of Typographical herein was not the subject of the memorandum and final decree in the said suit in the Court of Chancery).

16. The defendant herein and its label involved herein are the same defendant and

---

[2] The amended bill of complaint gives the common name as Union Printers League of New Jersey, while the powers of attorney by Allied and Typographical give the common name as Printers League of New Jersey.

the same label involved in the said Chancery proceedings.

17. The question presented by Hudson Allied to and adjudicated by the Court of Chancery, namely, whether or not Masters had copied or imitated Hudson Allied's label or used said copy or imitation in business to the damage of Hudson Allied, is, in substance, the question Allied presents to this court for adjudication.

## Discussion

The plaintiffs' pleadings, to say the least, are confusing and misleading. For example, paragraph 3 of the amended bill of complaint states, inter alia, that "the several causes of action of the complainants herein arise under the Patent Trademark and Patent Design Laws of the United States of America, * * *", neither the complaint nor the record discloses any patent or design patent pleaded or relied upon.

This action is brought in the common or recognized name of each plaintiff.

The amended bill of complaint is barren of any allegation that the defendant has used or threatened to use its trade-mark in interstate or foreign commerce. Proof of this fact is equally lacking. The record discloses that the only thing which can be said to remotely touch upon interstate transactions by defendant is Exhibit P–51, "The Rigo Record", for distribution on Long Island in the State of New York, but there is nothing to show it was an interstate sale by defendant, and the evidence at best is as consistent with intrastate as with interstate business.

The federal courts are specially given jurisdiction irrespective of diversity of citizenship or amount involved (15 U.S. C.A. § 97), of actions arising because of the unlawful use in interstate commerce of a trade-mark registered under the Acts of Congress (Kasch v. Cliett, 5 Cir., 297 F. 169; Youngs Rubber Corporation, Inc. v. C. I. Lee & Co., Inc., et al., 2 Cir., 45 F.2d 103, 15 U.S.C.A. § 96); but such is dependent on proof of an actual or immediately threatened use of the defendant's trade-mark in interstate commerce and this proof is lacking, therefore jurisdiction herein requires diversity of citizenship and a matter in dispute, the value of which is in excess of $3,000.

Allied and Typographical attempt to prove diversity by alleging and offering testimony to the effect that the officers and members of the executive council of each are not citizens of New Jersey. In order to pass upon whether or not such effectively accomplishes its intended purpose, it is necessary to consider the manner in which the action is brought, that is, in the common or registered names of the plaintiffs.

Rule 17(a) of the Federal Rules of Civil Procedure requires that every action be in the name of the real party in interest, and this the plaintiffs have complied with. They have executed powers of attorney to Printers, but the test, irrespective of said powers of attorney, is whether or not there is diversity between the real parties in interest and the opposing party or parties.

Rule 17(b) of the Federal Rules of Civil Procedure permits an unincorporated association of seven or more members to sue in its common name, if it has such capacity by the law of the state in which the district court is held.

In 1903, the Legislature of New Jersey passed what is commonly referred to as the "Practice Act of 1903", P.L.1903, p. 537, and by paragraph 40 thereof it provided that an unincorporated association of seven or more persons, having a recognized name, could be sued by such name. In 1928, P.L.1928, p. 65, said Act was amended to permit an unincorporated association of seven or more members having a recognized name to sue by such name.

A supplement to "An act respecting the Court of Chancery" (Revision of 1902) was passed in the year 1925, P.L.1925, p. 395, and it permitted suits "In Equity" against unincorporated organizations of seven or more members, having a recognized name by such name.

The case of Kline v. Knights of the Golden Eagle et al., 113 N.J.Eq. 513, 167 A. 758, passed upon the question of whether or not an unincorporated association having a recognized name could sue "In Equity" by such common name, and the Court of Chancery held that such a suit could not be maintained because there was no enabling act, the Act of 1903 and the amendment of 1928 aforesaid, relating to suits "At Law" only.

In 1937, the statutes of New Jersey were revised, and by 2:78–1, N.J.S.A. 2:78–1, it is provided that any unincorporated association or organization, consisting of seven or more persons and having a recognized

name, can sue or be sued in any court of said state by such name.

It therefore follows that Allied and Typographical have capacity by the law of the State of New Jersey to sue in their common names, but in cases such as this where jurisdiction requires diversity of citizenship, even though capacity has been accorded the said unincorporated association to sue by such name, the citizenship of the individual members must nevertheless be made to appear, and their citizenship must be wholly diverse from that of the opposing party or parties. Thomas v. Board of Trustees of the Ohio State University, 1904, 195 U.S. 207, 25 S.Ct. 24, 49 L.Ed. 160 (Moore's Federal Practice, Vol. 2, page 2100); Rosendale et al. v. Phillips et al., 2 Cir., 87 F.2d 454.

Allied and Typographical cannot meet the requirements of diversity of citizenship and their escape, if any, is in the class action (Rule 23), where only the citizenship of the representative or representatives need appear. Moore's Federal Practice, Vol. 2, page 2100.

This court desires to pass upon the merits of as many of the questions presented as possible, and relying upon the spirit and the word of the Federal Rules of 'Civil Procedure, and more particularly Rules 1 and 15 and the case of Youngs Rubber Corporation, Inc. v. C. I. Lee & Co., Inc., et al., 2 Cir., 45 F.2d 103, it does not dismiss the action of Typographical for want of jurisdiction, but reopens this case to afford Typographical an opportunity to establish its right to proceed under Rule 23.

The same opportunity is not afforded Allied, because prior to April 2, 1937, it authorized Hudson Allied to institute an action in the Court of Chancery of New Jersey against the same defendant and label complained of herein on a label substantially identical with the trade-mark of Allied herein, and it obtained a final decree on the question of whether or not Masters had copied or was imitating said label and using said copy or imitation in such a way as to unfairly compete with Allied and its locals.

The Court of Chancery entered its final decree on April 12, 1937; thereafter, and in September, 1938, Hudson Allied filed a petition, wherein it asked that the decree be vacated and set aside and the petition was referred to a special master for the purpose of taking newly discovered evidence, which at the original hearing was unknown to Hudson Allied. When the master reported on August 11, 1939, that the label of Masters would in fact deceive persons of average intelligence who demanded a union label on their printed work, and when the label of the defendant appeared on said work, accepted the same believing it to be the union label of Hudson Allied, Masters took exception thereto and the Court of Chancery sustained said objections, holding that the testimony before the master showed the deception resulted from acts of the defendant arising after the signing of the original decree in the cause; that said acts might be cause for a new or plenary suit, but certainly they could not, under the circumstances, be considered as newly discovered evidence and having a bearing upon the original suit.

On January 9, 1940, Allied and Typographical moved herein to strike the defense that the aforesaid decree of the Court of Chancery was res judicata. This court held it was res judicata, and that the complaint herein could stand, if it stood at all, only as to a period beginning on April 12, 1937 (date of Chancery decree), and running subsequent thereto, and now that the court has heard the proof on the part of Allied for the period after April 12, 1937, it finds same directed to whether or not there was actual confusion or fraudulent intent, such as in the nature of evidence which, while unnecessary (Hilton v. Hilton, 90 N.J.Eq. 564, 107 A. 263; A. Hollander & Son, Inc. v. Philip A. Singer & Bro., 119 N.J.Eq. 52, 180 A. 671), might have and could have been received in the Chancery matter, and the decree of that court determined the question of alleged copying, imitating and unfair competition, and so long as it remains unreversed, it is conclusive upon Hudson Allied and its privies, not only as to the particular property involved in the suit, but as to all future litigation between the same parties or their privies, touching the subject matter, and every matter which was offered and received to sustain or defeat the claim, and any other admissible matter which might have been offered for that purpose, and even though the property involved in the subsequent litigation be different from that which was involved in the first, if there be substantial identity in the subject matter of the two suits. In re Walsh's Estate, 80 N.J.Eq. 565, 74 A. 563; Nuzzi v. United States Casualty Co., 121 N.J.L. 249, 1 A.2d 890. Therefore, the decree of the Court of

Chancery, while it stands, is res judicata of the matters herein presented by Allied (In re Leupp, 108 N.J.Eq. 49, 153 A. 842), and it will serve no useful purpose to permit Allied to attempt to proceed under Rule 23. Its action is dismissed for the reasons aforesaid.

### Conclusions of Law

1. Allied and Typographical are unincorporated associations of seven or more members, each having a recognized or common name, and they can sue by such recognized or common name under the laws of the State of New Jersey.

2. Allied and Typographical have members who are residents of the State of New Jersey, and because diversity of citizenship is necessary herein, they cannot sue in their recognized or common names.

3. When an unincorporated association of seven or more members, having a common or registered name, sues by such name and cannot establish that the citizenship of its individual members is diverse from that of the opposing party, the court may, in accordance with the spirit and letter of the Federal Rules of Civil Procedure, grant said association an opportunity to proceed under Rule 23 (class action), where only the citizenship of the representative or representatives need appear. However, this will not be done as to any matter when it appears that to do so as to said matter would be futile because of a prior adjudication in a court of competent jurisdiction, involving the same parties and their privies and substantially the same subject matter.