34 C.C.P.A. (Patents)

## POCAHONTAS OPERATORS ASS'N v. CARTER COAL CO.

Patent Appeals Nos. 5244–5247.

Court of Customs and Patent Appeals.

Feb. 11, 1947.

Rehearing Denied March 21, 1947.

Charles R. Allen of Washington, D. C., for appellant.

Herbert J. Jacobi and Leslie D. Taggart, both of New York City (E. F. Wenderoth, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in trade-mark opposition proceedings from the decision of the Commissioner of Patents, 65 U.S.P.Q. 430, affirming the decisions of the Examiner of Interferences dismissing appellant's notices of opposition and holding that appellee was entitled to the registration of its four trade-marks comprising essentially the term "Olga" and the words "America's Largest-Selling Pocahontas" for use on so-called "Pocahontas coal."

Each of appellee's applications for registration of its trade-marks was filed on September 1, 1942.

In Appeal No. 5244, Opposition No. 22,-364, appellee alleged in its application for registration that it had used the trade-mark comprising the words "Olga America's Largest-Selling Pocahontas" on its coal since August 4, 1942.

In Appeal No. 5245, Opposition No. 22,-365, appellee alleged in its application that it had used the trade-mark comprising the term "Olga" in an inner circle and the words "America's Largest-Selling Pocahontas Coal" in an outer circle on its coal since August 5, 1942.

In Appeal No. 5246, Opposition No. 22,366, appellee alleged in its application that it had used the trade-mark comprising the term "Olga" in an inner circle, together with the words "America's Largest-Selling Pocahontas" in an outer circle on its coal since August 5, 1942.

In Appeal No. 5247, Opposition No. 22,367, appellee alleged in its application that it had used the trade-mark comprising the term "Olga Coal" in an inner circle, and the words "America's Largest-Selling Pocahontas" in an outer circle on its coal since August 4, 1942.

In each of appellee's applications, all of the words in its trade-marks except the term "Olga" were disclaimed apart from the mark as shown.

Appellant filed a notice of opposition to each of appellee's applications. It was alleged in appellant's notices of opposition that it was a voluntary association located in the city of Bluefield, county of Mercer, State of West Virginia; "That the opposer, which term includes its members and its predecessors in business, has for many years last past, been engaged in the coal business as producers, dealers and merchants and in the mining, sale and distribution of coal, which goods are of the same descriptive properties as the coal of Carter Coal Company, the applicant;" that prior to August 4, 1942, it had used in a circular design, a pictorial representation of a girl and the name "Pocahontas" and has continuously since used that mark in connection with the selling and distribution of Pocahontas coal; that it had used long prior to appellee's first date of alleged use of its trade-marks, such names as "O.P.", "Pocahontas Coal", "Genuine Pocahontas", "Original Pocahontas America's Favorite Fuel", and "Original Pocahontas America's Favorite Household Fuel" to identify its coal; that by reason of extensive advertising, selling and distribution of its coal under the name "Pocahontas," its mark has become widely and favorably known to the trade and to the purchasing public throughout the United States as the property of opposer; that the term "Pocahontas" in appellee's marks comprises the essential feature of the opposer's name and that each of appellee's marks is deceptively similar to opposer's name and its marks; that the use by appellee of its marks is likely to cause confusion in trade and deceive purchasers; that that portion of appellee's marks "America's Largest-Selling Pocahontas" "is false and misleading and misdescriptive as applied to applicant's coal and its distribution;" that appellee is not entitled to the exclusive use of its alleged marks including the notation "America's Largest-Selling Pocahontas;" and that the opposer believes it will be damaged by the registration of appellee's marks.

In its answers to appellant's notices of opposition, appellee alleged that neither appellant nor its predecessors in business had ever been engaged in the coal business or in mining, selling or distribution of coal, as alleged in the notices of opposition; that the term "Pocahontas" is a geographical or generic term and that neither the opposer, nor anyone else, has or could possess exclusive ownership of said term for trade-mark purposes;" that appellee is the sole and exclusive owner of the trade-marks set forth in its applications and that it is entitled to the registration of each of its trade-marks; that the allegations in appellant's notices of opposition that it had used the trade-marks therein referred to on coal, were false, deceptive and misleading; and that appellant would not be damaged by registration of appellee's marks.

Considerable evidence was introduced by each of the parties.

On the record presented, the Examiner of Interferences and, on appeal, the Commissioner of Patents held that appellant is merely an informal, unincorporated, non-profit association of coal producers; that the association has no constitution, charter, or by-laws; that it keeps no regular records and has no regular meetings; that it operates as a collective bargaining agent in making wage contracts for those coal producing companies which are members of the association; that it acts as an advertising agent for those members and employs attorneys for the purpose of carrying on certain litigation in which the several members of the association are themselves parties; that appellant does not produce or sell coal, nor does it exercise any control over the coal producers which it claims to represent; that it has failed to establish that it would be damaged by the registration of appellee's marks; and that it is not entitled to oppose the registration of appellee's marks under the provisions of section 6 of the Trade-Mark Act of February 20, 1905, and, accordingly, dismissed the notices of opposition.

Each of the tribunals of the Patent Office considered, ex parte, the right of appellee to the registration of its trade-marks, and each held, after considering the evi-

dence of record, that appellee's marks were not misrepresentative of its goods and that it was entitled to the registration of its marks.

Owing to the fact that the issues in the four appeals were substantially the same, and as the evidence submitted by the parties was contained in a consolidated record, the Commissioner of Patents disposed of the issues presented in a single decision. Accordingly, the four appeals to this court will be disposed of in one opinion.

It appears from the record that appellant is an association which has existed for more than 40 years; that the witness W. E. E. Koepler has been secretary of the appellant for more than 25 years; that appellant is an informal, unincorporated, non-profit association of coal producers located in what is known as the Pocahontas coal field which, according to the record, includes portions of McDowell, Mercer, and Wyoming counties in West Virginia, and Tazewell County, Virginia; that there are approximately 62 coal mines in the Pocahontas field; that many, if not all, of those companies use the term "Pocahontas" in advertising the coal mined by them; that among the members of appellant association are the Algoma Coal and Coke Company, of Algoma, West Virginia; the Pocahontas Corporation, of Pocahontas, Virginia; Pocahontas Fuel Company, Incorporated, of Pocahontas, Virginia, and New York City, New York; and Pulaski Iron Company, of Pocahontas, Virginia; that according to the witness Koepler—

"The function of a trade association is generally to do for the members the things that are of common interest and that can be done more economically and effectively than each operator could do for himself individually. Those activities cover the full range of activities of each of the companies, beginning with all matters pertaining to the production of coal; labor matters; a great many mechanical matters pertaining to mining and the preparation of coal; the distribution of coal by rail, truck, water; the promotion of the sale of the coal and the protection of the trade name, so as to conserve for the companies the business that would be otherwise lost to infringers, others who would impose on the reputation of the coal."

The witness Koepler further stated that as an executive officer of the association he manages appellant's affairs, engages attorneys and other representatives of the association for various activities, and performs such other services as may be approved by the executive committee of the association, which is composed of a president, a vice-president, a treasurer, and three other members; that the only contractual relationship existing between the members and the association is that "The Association acts as a collective bargaining agency for these companies and makes a wage contract for its members;" that members of the association contribute to the financing of the association on a voluntary basis and the amount contributed is based upon the production of the member during the year preceding its election to membership; and that if a member fails to contribute to the association, it ceases to be a member.

It further appears from the record that appellant is not actually engaged in producing or selling coal and, accordingly, does not use a trade-mark on coal; and that, as stated by the witness Koepler— "The Association derives no profit to itself from any of its activities, operating in the interests of the operators of the field—*members as well as non-members, but particularly the members.* We operate at cost in the case of such printed matter as we provide; we furnish that either at the expense of the Association or at cost of printing. We derive no profit from anything we do—being employed for the purpose of serving, rather than for the purpose of conducting a business." (Italics ours.)

It further appears from the record that one of the members of appellant, the Pocahontas Fuel Company, Incorporated, is the owner of two trade-mark registrations; one, "Original Pocahontas," Registration No. 232,348, registered September 6, 1927, on an application filed October 15, 1926, and the other, "America's Favorite Household Fuel," Registration No. 336,773, registered July 14, 1936, on an application filed February 28, 1936; that both of those

registrations are used by the Pocahontas Fuel Company, Incorporated, on Pocahontas coal produced in the Pocahontas district; that that company is one of the largest producers of Pocahontas coal; and that it has also used in its advertising, together with the trade-mark "Original Pocahontas" the letters "O.P." and the slogans "America's Favorite Household Fuel," "World's Most Efficient Power Fuel" and "World's Largest Producers of Smokeless Coal."

There is also evidence of record tending to establish that the Pocahontas Fuel Company, Incorporated, is the largest producer and seller of Pocahontas coal in the United States. (It may be stated at this point that appellee has introduced considerable evidence for the purpose of establishing that it is the largest producer and seller in the United States of Pocahontas coal.)

For reasons which are hereinafter stated, we find it unnecessary and, in fact, improper, to consider the evidence with regard to that issue.

One of the issues presented to the tribunals of the Patent Office, that is, that appellee's trade-marks, particularly the term "Pocahontas" contained therein, is deceptively similar to and comprises the essential feature of appellant's name, was decided adversely to appellant by the tribunals of the Patent Office and that issue is not raised in this court by the reasons of appeal.

It is contended by counsel for appellant that appellant is a proper party and has a right under the law to oppose the registration by appellee of its trade-marks. In support of that argument, counsel for appellant states that the notices of opposition were signed and sworn to by the secretary of appellant, and as each of the notices of opposition contains the allegation that the term "opposer" contained therein includes its members, and as appellant could not function without its members, appellant has the right under section 6 of the Trade-Mark Act of February 20, 1905, U.S.C., title 15, sec. 86, 15 U.S.C.A. § 86, to represent not only itself but also each of the members of the association. Sec-

tion 6, supra, so far as pertinent, reads: "Any person who believes he would be damaged by the registration of a mark may oppose the same by filing notice of opposition, stating the grounds therefor, in the Patent Office within thirty days after the publication of the mark sought to be registered, which said notice of opposition shall be verified by the person filing the same before one of the officers mentioned in section two of this act. An opposition may be filed by a duly authorized attorney, but said opposition shall be null and void unless verified by the opposer within a reasonable time after such filing."

Our attention is also called to section 29 of that Act, U.S.C., title 15, sec. 108, 15 U.S.C.A. § 108, where it is stated, among other things: "The terms 'person' and 'owner', and any other word or term used to designate the applicant or other entitled to a benefit or privilege or rendered liable under the provisions of this Act, include a firm, corporation, or association as well as a natural person."

Counsel for appellant also relies upon the decisions in the following cases in support of his contention: Denver Milk Bottle, Case & Can Exchange, Inc., v. McKenzie, 87 Colo. 379, 287 P. 868; International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293; Illuminating Engineering Society v. Seelig Specialties Co., 42 U.S. P.Q. 282; Sporting Arms and Ammunition Manufacturers' Institute v. Routledge Mfg. Co., 49 U.S.P.Q. 400; Trustees for Arch Preserver Shoe Patents v. Brockton Shoe Manufacturing Co., Inc., 19 T.-M. Rep. 66; United Mine Workers of America et al. v. Coronado Coal Co. et al., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; International Allied Printing Trades Ass'n et al. v. Master Printers Union of New Jersey, 34 F.Supp. 178; Barrett v. Irish Industrial Development Association, 41 App.D.C. 244, 1913 C.D. 470; Colonial Williamsburg, Incorporated, v. Tomlinson of High Point, 40 U.S.P.Q. 563.

In the case of Denver Milk Bottle, Case & Can Exchange, Inc., v. McKenzie, supra [87 Colo. 379, 287 P. 869], decided by

the Supreme Court of Colorado, appellant was a corporation incorporated by those engaged in bottling milk and cream for sale. It appears from the opinion in that case that there was an agreement by the corporation and its members that the purpose of the corporation was to collect, serve, and retrieve lost and unlawfully appropriated milk bottles, milk cans and milk cases belonging to the members, and that the purpose of the agreement was to give to the corporation "full and ample power and authority in the premises"; that under the agreement, the corporation not only had the right and authority, but it was its duty to carry out the terms of the agreement hereinbefore stated; and that the corporation was further authorized to institute in its own name such actions as might be deemed necessary to carry out the purpose of the agreement. The court there held that the corporation had authority to recover milk bottles which belonged to some of the members of the association and which were unlawfully in the possession of a person who was not a member of the corporation.

In the case of International News Service v. The Associated Press, supra, it was held that the Associated Press, which was incorporated under the Membership Corporations Law of the State of New York, Consol.Laws, c. 35, and whose members were individuals who either owned or represented approximately 950 daily newspapers published in the United States, and which was organized for the purpose of gathering and furnishing news for the use and benefit of its members, was a proper party to sue the International News Service, a corporation organized under the laws of the State of New Jersey and whose business was also the gathering and furnishing of news to newspapers published in the United States. It appears from the opinion in that case that it cost the Associated Press approximately $3,500,000 to gather and furnish the news to its members, which sum was apparently paid by the members. Whether the Associated Press actually made any money on its work of gathering and furnishing news, does not appear from the opinion in that case. It further appears that the by-laws

of the Associated Press required that the news so furnished should be published in the newspapers of its members and that no other use of it was permitted. In holding that the Associated Press was entitled to sue the International News Service, the court held that it had a property interest in the news so gathered and furnished by it.

In the case of Illuminating Engineering Society v. Seelig Specialties Co., supra, decided by the Commissioner of Patents, it appears that the Illuminating Engineering Society was composed of engineers interested in scientific illumination; that the society was known throughout the United States by the letters "I.E.S."; that it had approved specifications for portable floor and table lamps and parts thereof; that it had entered into contracts with approximately 100 manufacturers which provided that those manufacturers might manufacture lamps in accordance with the society's specifications and that they might apply to their products labels, which were supplied by the society, indicating that their product complied with the I.E.S. specifications. It was further provided in the contracts that the failure of any manufacturer who had entered into a contract with the I.E.S. should forfeit all of its rights if it failed to comply with the specifications of the society. It further appeared that the lamps and parts thereof manufactured and sold by the manufacturers, had been advertised throughout the United States as the I.E.S. lamps and that such lamps and parts thereof were so known to the purchasing public. In view of the facts in that case, the Commissioner of Patents held that the Illuminating Engineering Society was entitled to oppose the registration of the trade-mark "I.L.S." for use on lamps and parts thereof. In so holding, the commissioner stated that although the Illuminating Engineering Society had not used its mark as a technical trade-mark, its use was analogous thereto, and that the society would be damaged by the registration of appellee's trade-mark.

In the case of Sporting Arms and Ammunition Manufacturers' Institute v. Routledge Mfg. Co., supra, the Commissioner of Patents dismissed appellant's opposi-

tion because it was a non-profit association composed of manufacturers; that appellant was not itself engaged in the manufacture or sale of any kind of merchandise and did not claim that it would be damaged by the registration of appellee's mark and, therefore, was not entitled to oppose appellee's registration of its mark. In that case it was stated in the commissioner's decision that the function of the Sporting Arms and Ammunition Manufacturers' Institute was to promote and protect the interests of manufacturers who manufactured and sold sporting arms, ammunition, etc., which was employed in "Skeet shooting;" and that the applicant, Routledge Manufacturing Company, was entitled to register the notation "Mo-Skeet-O", the word "Skeet" being disclaimed apart from the mark as shown, on goods which, the commissioner stated in his decision, were described in the application as a "marksmanship practice game and the various apparatus therefor."

In the case of Trustees for Arch Preserver Shoe Patents v. Brockton Shoe Manufacturing Co., Inc., supra, it was held that the opposer, the Trustees for Arch Preserver Shoe Patents, a partnership, was the owner as trustees, of at least one registered mark. The decision of the commissioner denied a petition by the applicant, the Brockton Shoe Manufacturing Company, Inc., to dismiss the opposer's notice of opposition on the ground that the opposer was not entitled to oppose the registration under the provisions of section 6 of the Trade-Mark Act of February 20, 1905. It appeared in that case that certain trade-mark registrations had been transferred by the owners thereof to the trustees, the purpose of which is not explained in the commissioner's decision, nor are the trade-marks of either of the parties involved therein set forth in the decision.

In the case of United Mine Workers of America et al. v. Coronado Coal Co. et al., supra, it was held that the United Mine Workers of America, an unincorporated labor union which had a membership of 450,000 and which, as the court stated in its decision, acted as a business entity, distinct and apart from its individual members, and that "No organized corporation has greater unity of action, and in none is more power centered in the governing executive bodies," could sue and be sued in the federal courts. It would unnecessarily extend this opinion to recite here the details relating to the organization and the powers conferred upon the United Mine Workers of America, all of which is set forth in the opinion of the court in that case.

In the case of International Allied Printing Trade Ass'n et al. v. Master Printers Union of New Jersey, supra, it was held that each of appellants had a registered trade-mark in the United States Patent Office for use on paper and stationery. The suit against appellee was an action for unfair competition for the defendant's use on similar goods of a trade-mark similar to that of appellants. It appears that appellants were the real parties in interest, and that each was a voluntary unincorporated association or union of printers consisting of more than seven members. The United States District Court for the District of New Jersey called attention in its decision to the fact that under the law of the State of New Jersey, an unincorporated association consisting of more than seven persons having a recognized name, could sue or be sued in that State. The court pointed out that a federal statute, 15 U.S.C.A. § 97, conferred jurisdiction upon the federal courts of all suits at law or in equity respecting registered trade-marks without regard to the amount in controversy; that Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c requires that every action be brought in the name of the real party in interest and that applicants had complied with that rule; and that under Rule 17(b) of such rules, an unincorporated association consisting of seven or more members might sue in its own name, if under the law of the state in which the suit was brought in the federal district court, the association had the capacity to sue.

Other issues were decided in that case which it is unnecessary for us to state here. It should be pointed out that, in that case, each of the applicants had a registered trade-mark, and that each was

suing in its own name by virtue of the laws of the State of New Jersey.

In Barrett v. Irish Industrial Development Association, supra, the United States Court of Appeals for the District of Columbia held that appellee having a registered trade-mark in Great Britain which its licensees in the United States were permitted to affix to goods of various kinds, including clothing materials, etc. of Irish manufacture, was entitled to oppose the application of appellant Barrett for the registration of a confusingly similar mark for use on goods manufactured in the United States.

In Colonial Williamsburg, Incorporated, v. Tomlinson of High Point, supra, the Commissioner of Patents held that the opposer, Colonial Williamsburg, Incorporated, had the right to oppose the registration by Tomlinson of High Point of the trademark "The Williamsburg Galleries" for use on various articles of household furniture, and that the applicant was not entitled to register its mark.

It is apparent, we think, from what has been said, that none of the cases hereinbefore referred to and relied upon by counsel for appellant supports his contention that appellant in the instant case has authority under the statute to oppose the registration of appellee's marks.

It is not alleged in appellant's notices of opposition, nor is it claimed here, that appellee's marks, considered in their entirety, are either descriptive or misdescriptive of appellee's goods. Counsel for appellant contends, on the contrary, that only those portions of appellee's trademarks which have been disclaimed apart from the marks as shown are misdescriptive. Accordingly, it is clear from the record, as hereinbefore stated, that as appellant does not mine or sell coal, and does not own or have any control over any trade-marks, it, as an association, has not established that it would be damaged by the registration of appellee's trade-marks within the purview of section 6 of the Trade-Mark Act of February 20, 1905, supra. See Revere Paint Co. v. Twentieth Century Chemical Co., 150 F.2d 135, 32 C.C.P.A. Patents, 1096, 1100.

It appears from the record that the registered trade-marks, hereinbefore referred to, are owned and used by the Pocahontas Fuel Company, Incorporated, and that the advertising slogans, hereinbefore quoted, are also used by that corporation. Neither the Pocahontas Fuel Company, Incorporated, nor any of the other members of the association have joined in the notices of opposition.

It further appears from the record, as hereinbefore noted, that there is no contractual relationship existing between appellant and its members except that "The Association acts as a collective bargaining agency" for its members and makes wage contracts for them.

Considering all of the facts of record, hereinbefore related, we are of opinion that the tribunals were right in holding that appellant has no legal authority to oppose, on behalf of its members, appellee's applications for the registration of its trade-marks. Tim & Co. v. Cluett, Peabody, & Co., 42 App.D.C. 212; Key West Cigar Manufacturers' Ass'n et al. v. Rosenbloom, C.C., 171 F. 296.

Owing to the fact that the tribunals of the Patent Office granted appellee's applications for registration of its marks, and as no appeal was taken by appellee to this court from the decision of the Commissioner of Patents, and as appellant has no authority to oppose appellee's applications for registration, either on its own behalf or on behalf of its members, we have no authority to consider the ex parte decision of the Commissioner of Patents. See Revere Paint Co. v. Twentieth Century Chemical Co., supra.

For the reasons stated, the decision of the Commissioner of Patents dismissing appellant's notices of opposition, is affirmed.

Affirmed.